EYDE v LANSING TOWNSHIP

Docket No. 52221. Submitted June 5, 1981, at Grand Rapids.—Decided September 21, 1981. Leave to appeal applied for.

Patrick Eyde and Michael Eyde filed a petition in the Michigan Tax Tribunal naming as respondents the Charter Township of Lansing, the Drainage Board for the Remy-Chandler Intercounty Drain and the Augmented Drainage Board for the Remy-Chandler Intercounty Drain. The Tax Tribunal *sua sponte* dismissed the petition with respect to the drainage boards on the basis that the Eydes had not filed their appeal timely against the drainage boards and that the Eydes lacked standing to challenge the actions of the drainage boards because they were not participants in the proceedings specified in the Drain Code of 1956. The Eydes appeal. *Held:*

1. The Tax Tribunal has exclusive and original jurisdiction with respect to the review of the final decision, ruling, determination or order relating to special assessments under property tax laws. The final determination of need fixing the apportionments of assessments among the governmental units in a drainage district is not an assessment under the property tax laws, such assessments being made under the Drain Code of 1956 and being spread upon the governmental units in the drainage district. Accordingly, review of the drainage boards' actions and determinations is not within the jurisdiction of the Tax Tribunal. Further, the statute providing for review of such determinations of drainage boards provides that review shall be by certiorari, while the statutory method of review by the Tax Tribunal is *de novo* review. The Tax Tribunal is without jurisdiction to review the claims against the drainage boards.

2. The temporal limitation for review of the drainage boards' order of determination of need and fixing of assessments is not

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur 2d, Certiorari § 23.
   70 Am Jur 2d, Special or Local Assessments § 25.
   72 Am Jur 2d, State and Local Taxation § 787.
[2] 14 Am Jur 2d, Certiorari § 23.
   16A Am Jur 2d, Constitutional Law § 831.
   72 Am Jur 2d, State and Local Taxation § 785.

constitutionally invalid because individual taxpayers are not given personal notice. Since the assessments made by the drainage boards are upon the governmental units rather than individual pieces of property, personal notice to the governmental units and notice by publication to the public is sufficient to satisfy due process.

Affirmed.

R. B. Burns, P.J., concurred in the result only.

1. Drains — Taxation — Tax Tribunal — Jurisdiction — Certiorari — Statutes.

A final order of determination of need by an augmented drainage board whereby other public corporations are assessed for a drainage project pursuant to the Drain Code of 1956 is not a special assessment under property tax laws within the meaning of the Tax Tribunal Act; review of such order of determination is mandated by statute to be by certiorari and thus must be in circuit court since review by the Tax Tribunal is by trial *de novo* (MCL 205.731, 280.536; MSA 7.650[81], 11.1536).

2. Drains — Constitutional Law — Notice — Due Process.

The provision in the Drain Code of 1956 requiring that any attack upon the determination of an intercounty drainage board as to establishment of and assessments for a drain must be made by seeking certiorari within 20 days of the final order of determination is not constitutionally invalid by reason of the fact that personal notice need only be given to the affected public corporations but not the individual taxpayers; since the assessments determined by the drainage board are upon the public corporations rather than upon the individual taxpayers, notice by publication to individual taxpayers is sufficient to satisfy due process requirements.

*Lester N. Turner, P.C.* (by *Robert E. McCarthy*), for petitioners.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Joseph A. Fink* and *John M. Lichtenberg*), for the drainage boards.

Before: R. B. Burns, P.J., and Allen and T. Gillespie,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ALLEN, J. This is the second of two identical actions brought by Patrick and Michael Eyde against the Charter Township of Lansing, the Drainage Board for the Remy-Chandler Intercounty Drain and the Augmented Drainage Board for the Remy-Chandler Intercounty Drain. On February 15, 1979, the Eydes, property owners in the Township of Lansing, filed a two-count complaint against the above noted township and boards in the circuit court for Ingham County, and, on February 21, 1979, they filed an identical two-count petition in the Michigan Tax Tribunal. The circuit court suit eventually became Docket No. 48319 in this Court and the Tax Tribunal action, which is the instant appeal, became Docket No. 52221.

Count I of both the complaint and the petition alleged numerous defects in the proceedings taken under § 536 of the Drain Code, MCL 280.536; MSA 11.1536, by the two drainage boards and further alleged that § 536 of the Drain Code was unconstitutional. None of the allegations contained in Count I were directed against the Township of Lansing. Count II, which was directed against the township, reiterated all of Count I and alleged that the special assessment levied by the township was invalid by reason of procedural irregularities, gerrymandering, and factual errors and further alleged that § 539 of the Drain Code, MCL 280.539; MSA 11.1539, under authority of which the township levied the assessment, was unconstitutional.

In December 1979, the circuit court for Ingham County granted summary judgment in No. 48319 in favor of the township on Count I on grounds that Count I claims lay against the drainage boards, and granted accelerated judgment on Count II on grounds that jurisdiction as to Count II claims lay with the Tax Tribunal and not in the circuit court. On appeal, this Court upheld the

determinations of the circuit court. *Eyde v Lansing Twp,* 105 Mich App 370, 379; 306 NW2d 797 (1981).[1] The drainage boards did not file motions testing the court's jurisdiction on Count I claims and thus, the Eydes' action against the boards is still pending in circuit court.

On February 21, 1980, the Tax Tribunal *sua sponte* dismissed the Eydes' petition in No. 52221 against the drainage boards, holding that the Eydes did not file their appeal timely against the drainage boards, that to add the drainage district as a party "at this time would also be untimely", and that the Eydes lacked standing to challenge the actions of the boards "since petitioners are not participants to the proceedings specified in [MCL 280.511 *et seq.;* MSA 11.1511 *et seq.]*". The Tax Tribunal did not dismiss the Eydes' action against the township and thus the Eydes' action against the township is still pending before the Tax Tribunal.

For further facts, see this Court's opinion in *Eyde v Lansing Twp, supra.*

The basic issue raised on appeal is whether the Tax Tribunal was without jurisdiction to hear the Eydes' claims under Count I against the drainage boards. The Eydes' argue that there must be one forum where all claims regarding drain assessment matters can be determined. The boards respond that claims filed against municipal units of government under the Drain Code of 1956 are not assessments "under property tax laws" and thus the Tax Tribunal is without jurisdiction to hear such claims.

In resolving the question raised above, we are

---

[1] "In our opinion, jurisdiction of the questions raised as to defendant township lay with the Tax Tribunal and not with the circuit court."

reminded of Judge LOUIS MCGREGOR'S opening statement in *Ray v Mason County Drain Comm'r,* 48 Mich App 559, 560; 210 NW2d 810 (1973), *vacated* 393 Mich 294; 224 NW2d 883 (1975).

"At the center of this dispute is the Drain Code of 1956, MCLA 280.1 *et seq.;* MSA 11.1001 *et seq.,* an exceedingly complex statute, the provisions of *which apparently are known by few in the profession and understood by far fewer." Ray, supra,* 560. (Emphasis supplied.)

Section 31 of the Tax Tribunal Act, MCL 205.731; MSA 7.650(31), states in pertinent part:

"The Tribunal's exclusive and original jurisdiction shall be:
"(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, *special assessments,* allocation, or equalization, *under property tax laws.*
"(b) A proceeding for refund or redetermination of tax *under the property tax laws."* (Emphasis supplied.)

The phrase "under property tax laws" has not been interpreted in Michigan appellate decisions. In interpreting statutes, every word should be given meaning and no word should be treated as surplusage if at all possible. *Stowers v Wolodzko,* 386 Mich 119; 191 NW2d 355 (1971). When certain things are specified in a law, the intention to exclude all others from its operation may be inferred. *Wolverine Steel Co v Detroit,* 45 Mich App 671; 207 NW2d 194 (1973). This Court must assume that the Legislature meant something by limiting review of decisions concerning special assessments to decisions relating to special assessments "under property tax laws". The final order

of determination of need made by the augmented board was not a "special assessment" made pursuant to property tax laws. That determination was made pursuant to § 519 of the Drain Code, MCL 280.519; MSA 11.1519, and is no more related to property tax laws than any other local government decision to spend. While the apportionment of costs against municipal corporations is termed a "special assessment" in the Drain Code, MCL 280.526; MSA 11.1526, it is not a special assessment "under property tax laws". It differs from a real property type assessment in that the "assessment" is not on property but is on the public corporation.

The public corporation is free to meet the levy in any legal way it chooses. MCL 280.526; MSA 11.1526. The public corporation—which in this instance is the township—could pay the assessment out of any funds available to the corporation —sales tax funds, general funds, ad valorem taxes, special assessments, or any combination thereof. Unlike a property assessment made under the General Property Tax Act, the assessment under the Drain Code is not a lien upon the township's lands. No lien attaches since no property is assessed. We therefore conclude that the Eydes' dispute with the drainage boards does not come within the language of the Tax Tribunal's statutory grant of exclusive jurisdiction, because the Eydes do not seek review of a decision relating to special assessments under property tax laws.[2]

---

[2] In our opinion in *Eyde v Lansing Twp, supra,* we held that the Tax Tribunal had jurisdiction over the Eydes' dispute with the township. We recognize that the Drain Code, MCL 280.263; MSA 11.1263, authorizes this assessment; such an assessment is, however, in the nature of a property tax as it is a burden running with the land and is enforceable by a tax lien and tax sale. We believe the Tax Tribunal's jurisdiction over disputes arising "under property tax laws" is not limited to disputes under the General Property Tax Act, but extends to any tax on real property.

Lending support to our determination that final orders of a drainage board are reviewable in the circuit court rather than in the Tax Tribunal is § 536 of the Drain Code, MCL 280.536; MSA 11.1536. That section reads:

"Neither the final order of determination nor the final order of apportionment shall be subject to attack in any court *except by proceedings in certiorari* brought within 20 days after the filing of such order in the office of the secretary of the board issuing the same. If no such proceeding shall be brought within the time above prescribed, the drain shall be deemed to have been legally established and the legality of the drain and the assessments therefor shall not thereafter be questioned in any suit at law or in equity." (Emphasis supplied.)

Review of Tax Tribunal decisions is by trial *de novo* and not by certiorari. MCL 205.735; MSA 7.650(35). As was stated by the Supreme Court in *Toledo, Saginaw & Muskegon R Co v Shafer,* 190 Mich 89, 91; 155 NW 712 (1916):

"An examination of the drain law clearly discloses that it was the intention of the legislature to have all matters pertaining to the locating and constructing of a drain, in the absence of fraud, tried out, determined, and forever settled in the direct proceedings to establish the drain or on certiorari, as provided for in the statute."

The Supreme Court has also stated that the purpose of the statute limiting review to certiorari within 20 days "undoubtedly is to give an opportunity to have a speedy hearing upon any question of jurisdiction or any question of irregularity". *Strack v Miller,* 134 Mich 311, 313; 96 NW 452 (1903). The Court has also stated that under the circumstances, certiorari "provides an adequate

remedy for any person aggrieved by the proceedings to establish a drain, and protect *[sic]* the public and its officers against the delay which might ensue if the proceedings could be otherwise attacked". *Auditor General v Bolt,* 147 Mich 283, 287; 111 NW 74 (1907). Clearly, Tax Tribunal procedures are not designed to provide the type of review needed for these drain decisions.

A further reason for leaving jurisdiction over Drain Code proceedings with the circuit court is that most drains, including the drain in the instant case, are funded through the issuance of bonds. Once it is established that a drain is necessary to the public health, it is essential that it be financed and constructed as quickly as possible. To that end the Legislature purposely adopted the expedited proceedings by way of certiorari with a 20-day appeal period. Turning jurisdiction over to the Tax Tribunal would defeat legislative intent and delay construction.

We recognize that there is merit in the Eydes' claim that it is preferable to have one forum in which the claims against the township and the claims against the drainage boards can be resolved. Obviously it is cumbersome and awkward to have jurisdiction in the circuit court over a portion of drain projects and jurisdiction in the Tax Tribunal over the remainder.[3] Yet in view of the explicit statutory provisions described above and the clear distinction between an assessment against property and an assessment on a public body (rather than on the public body's lands), and because we are reluctant to interfere with estab-

---

[3] We note, however, that the Eydes still have an action pending in circuit court against the drainage boards challenging the proceedings before the boards and still have an action pending in the Tax Tribunal against the township challenging the special assessment levied against their property by the township.

lished bonding procedures, we conclude that the remedy lies with the Legislature rather than with this Court.

Having determined that the Tax Tribunal did not err in holding it was without jurisdiction, it is technically unnecessary to pass upon the Eydes' claim that § 536, MCL 280.536; MSA 11.1536, is unconstitutional. Nevertheless, we believe the matter should be decided now. The Eydes argue that § 536 is constitutionally infirm because § 519, MCL 280.519; MSA 11.1519, only requires that personal notice be given the public corporation—in this instance the township and § 521, MCL 280.521; MSA 11.1521, only requires publication in a newspaper of general circulation. The Eydes contend that as property owners who would be assessed by the township they are entitled to reasonable notice of the pending project and that the published notice in county newspapers did not reasonably inform property owners of the drainage boards' actions.

A similar attack on the sufficiency of the notice provisions of the Michigan Drain Code was made and rejected in *Fair Drain Taxation, Inc v St Clair Shores,* 219 F Supp 646, 649-650 (ED Mich, 1963), aff'd 375 US 258; 84 S Ct 361; 11 L Ed 2d 311 (1963). That case involved the constitutional validity of § 467 and § 469 of the Code. MCL 280.467; MSA 11.1467, MCL 280.468; MSA 11.1468. The only difference between §§ 467 and 469 and §§ 517 and 519 is that the former two sections concern intracounty drains and the latter two sections concern intercounty drains. The court held that personal notice was not required.

"Plaintiffs further contend that the notice provisions of sections 467 and 469 violate both the state and the federal constitutions. It is important to recognize that

the final orders of determination and apportionment bind the public corporations involved, which must receive notice by registered mail under the statute. Notice by publication is also provided, but plaintiffs contend that they are entitled, as the class of people which may ultimately bear the burden of paying for the drain, to more effective notice than that of publication. But as such a class, plaintiffs are affected only indirectly and to the same degree as all other taxpayers in the preliminary stages of Chapter 20 proceedings which culminate in the final orders of determination and apportionment. Not until the proceedings reach the stage where it becomes necessary to decide what proportion of the cost of the proposed improvement shall be assessed to the particular parcel of land which each plaintiff owns, must opportunity be given to them as owners to be heard upon that question (see *Voight v Detroit,* 184 US 115; 22 S Ct 337; 46 L Ed 459 [1902]), and Michigan law affords opportunity to question such direct assessment on their property, upon proper notice and at an adequate hearing. See also *Chicago etc R R v Risty,* 276 US 567; 48 S Ct 396; 72 L Ed 703 [1928]; *Embree v Kansas City Road Dist,* 240 US 242; 36 S Ct 317; 60 L Ed 624 [1916]; *Soliah v Heskin,* 222 US 522; 32 S Ct 103; 56 L Ed 294 [1912]; *Londoner v Denver,* 210 US 373; 28 S Ct 708; 52 L Ed 1103 [1908]; *Goodrich v Detroit,* 184 US 432; 22 S Ct 397; 46 L Ed 627 [1902]. We hold, therefore, that the notice provisions contained in sections 467 and 469 of Chapter 20 are constitutional."

Michigan courts have reached similar conclusions. The Michigan Supreme Court has stated that certiorari under the circumstances "provides an adequate remedy for any person aggrieved by the proceedings to establish a drain, and protect *[sic]* the public and its officers against the expense and delay which might ensue if the proceedings could be otherwise attacked". *Auditor General v Bolt, supra,* 287. This Court has stated that "[e]very one affected by a drain is notified of the date and place of the determination board's meeting".

*Bartnicki v Wayne County Drain Comm'r,* 18 Mich
App 200, 204; 170 NW2d 856 (1969). The statute
considered in *Bartnicki* did not include provisions
for personal notice to property owners.

In the instant case, when the decision was made
to assess a certain portion of the cost against
property owners in the township, the Eydes be-
came directly affected. At that point they were
given personal notice by the township. Prior to
that time, the Eydes were only indirectly affected.
We find the notice requirements in §§ 519 and 521
constitutionally valid. The Eydes' reliance on *Alan
v Wayne County,* 388 Mich 210; 200 NW2d 628
(1972), is misplaced. That case did not hold that
personal notice rather than notice by publication
was required. Instead, it held that the content of
the notice was inherently misleading. Accordingly,
we hold that § 536 of the Drain Code of 1956 does
not violate the Eydes' right of due process under
the Michigan Constitution.

Affirmed, no costs, a question of public interest
being involved.

R. B. BURNS, P.J., concurs in the result only.