EYDE v LANSING TOWNSHIP

Docket Nos. 67135, 68112. Argued October 4, 1983 (Calendar No. 3).—
Decided December 28, 1984. Released January 15, 1985.

Patrick Eyde and Michael Eyde brought an action in the Ingham
Circuit Court against the Charter Township of Lansing, the
Drainage Board for the Remy-Chandler Intercounty Drain, and
the Augmented Drainage Board for the Remy-Chandler Inter-
county Drain, alleging that the establishment of the drainage
district and the apportionment of the cost of the drain among
affected municipalities involved numerous procedural defects
that render both the district and the assessments void; that
certain sections of the Drain Code pertaining to challenging an
apportionment (§ 536) and assessment (§ 539) are unconstitu-
tional; and that the special assessment imposed by the town-
ship upon their property was invalid. A similar petition was
filed in the Tax Tribunal. The court, Michael G. Harrison, J.,
granted the township's motions for summary and accelerated
judgment, holding that the challenges of establishment of the
district and of apportionment were more properly asserted
against the drainage boards and that the challenge of the
assessment against the plaintiffs' property was within the exclu-
sive jurisdiction of the Tax Tribunal, and concluding that the
challenged provision of the Drain Code pertaining to assess-
ment was constitutional. The challenges of establishment of the
district and of apportionment were left pending against the
boards. The Tax Tribunal dismissed the plaintiffs' petition with
respect to the boards as untimely. The challenge of the special
assessment was left pending against the township in the tribu-
nal. The Court of Appeals, M. F. Cavanagh, P.J., and J. H. Gillis
and Allen, JJ., affirmed the decisions of the circuit court
(Docket No. 48319); and Allen and Gillespie, JJ. (R. B. Burns,
P.J., concurring in the result only), affirmed the decision of the
tribunal (Docket No. 52221). The plaintiffs appeal.

In an opinion by Justice Ryan, joined by Chief Justice Wil-
liams and Justices Brickley and Boyle, the Supreme Court *held:*

1. Challenges of special assessments such as those in this case
are within the exclusive jurisdiction of the Tax Tribunal.
Because the plaintiffs challenged the assessment levied by the
township against their property, the circuit court correctly

granted the defendants' motion for accelerated judgment on all but the challenge of the constitutionality of § 539 of the Drain Code.

2. The Tax Tribunal does not have the authority to invalidate acts of the Legislature. As a result, the circuit court did not err in retaining jurisdiction over the challenge of the constitutionality of § 539, and because the challenge of § 539 presented purely questions of law and presented no genuine issue concerning any material fact, it did not err in deciding the constitutionality of that provision on a motion for summary judgment. Because the challenges of the establishment of the drainage district and of the apportionment of the cost of the drain did not state a cause of action against the township, but stated a claim more properly asserted against the drainage boards, the trial court did not err in granting summary judgment on that point.

3. Since § 539 provides that special assessments imposed pursuant to it shall be made under the statutory or charter provisions governing special assessments in the public corporation to the extent applicable, the Court of Appeals did not err in concluding that since the opportunity for effective objection to an assessment is provided in the township special assessment act, it was immaterial that it was contained in a separate statute.

4. Because the plaintiffs' claims against the drainage boards are outside the subject matter jurisdiction of the Tax Tribunal, the tribunal correctly dismissed the claims.

Affirmed.

Justice Levin, joined by Justice Kavanagh, dissenting, stated that because the Drain Code is not a property tax law and thus special drainage assessments are not levied under a property tax law, the plaintiffs should be able to maintain an action against the township in the circuit court challenging the assessment against their property. In addition, because the boards failed to provide the plaintiffs with reasonable notice of the hearings, they were not given a meaningful opportunity to object and were thereby denied due process of law.

105 Mich App 370; 306 NW2d 797 (1981) affirmed.

109 Mich App 641; 311 NW2d 438 (1981) affirmed.

*William D. McCririe, III,* for the plaintiffs.

*Thrun, Maatsch & Nordberg, P.C.* (by *Patrick J. Berardo),* for Charter Township of Lansing.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Joseph A. Fink* and *John M. Lichtenberg)* for the Drainage Board for the Remy-Chandler Intercounty Drain and the Augmented Drainage Board for the Remy-Chandler Intercounty Drain.

RYAN, J. On February 15, 1979, Patrick and Michael Eyde, owners of land in Lansing Township, filed a complaint in the Ingham Circuit Court alleging, in Count I, that numerous specified procedural defects associated with the establishment of the Remy-Chandler Drainage District, and with apportioning the cost of the Remy-Chandler Intercounty Drain among the affected municipalities, render both the drainage district and the assessments void. Count I of the complaint also challenged the constitutionality of § 536 of the Drain Code, MCL 280.536; MSA 11.1536.[1] In Count II of their complaint, the Eydes alleged that the special assessment imposed on their property by Lansing Township, as part of that township's efforts to meet its proportionate financial obligation to the Remy-Chandler Drainage District, was invalid because of various defects in the imposition of the assessment and because their property was not benefited by the drain. Count II of the complaint also challenged the constitutionality of § 539 of the

---

[1] MCL 280.536; MSA 11.1536 provides:

"Neither the final order of determination nor the final order of apportionment shall be subject to attack in any court except by proceedings in certiorari brought within 20 days after the filing of such order in the office of the secretary of the board issuing the same. If no such proceeding shall be brought within the time above prescribed, the drain shall be deemed to have been legally established and the legality of the drain and the assessments therefor shall not thereafter be questioned in any suit at law or in equity."

Drain Code, MCL 280.539; MSA 11.1539.[2] The complaint named as defendants Lansing Township and both the Drainage Board and the Augmented Drainage Board for the Remy-Chandler Intercounty Drain.[3]

---

[2] MCL 280.539; MSA 11.1539 provides:

"If the legislative body of a public corporation, which shall have been assessed under this chapter, shall determine that a part of the lands therein will be especially benefited by the drain project to the extent of any portion of the amount so assessed, then it may cause such portion to be assessed, according to benefits, against the especially benefited lands, provided such special assessment method of financing is not inconsistent with local financing policy as to similar drains and sewers. The assessment shall be made under the statutory or charter provisions governing special assessments in the public corporation insofar as they may be applicable, except that the special assessment proceedings may be initiated by resolution of the governing body of the public corporation without petition and any petition or written objection in opposition to the levying of special assessments shall be advisory only and shall not make necessary a petition for the project. After determining by resolution to proceed, the governing body shall then cause a special assessment roll to be prepared and thereafter the proceedings in respect to the special assessment roll and the making and collection of the special assessments thereon shall be in accordance with the provisions of the statute or charter governing special assessments in the public corporation, except that the total assessment may be divided into any number of installments not exceeding 30, and any person assessed shall have the right at the hearing upon the special assessment roll to object to the special assessment district previously established in which event due consideration shall be given to the objections. In the event such special assessments shall be levied, then all collections therefrom shall be used towards the payment of the assessment at large against the public corporation and each annual levy to be made for the payment of the assessment at large shall be reduced by the amount of money then on hand from special assessment collections available for such use. This section shall be applicable only where the drain assessment roll is confirmed subsequent to the effective date of this section. Nothing herein contained shall be construed to prevent the assessing of public corporations at large under this chapter, it being the intention hereof to provide a method whereby a public corporation may raise moneys by special assessments as above provided where such procedure conforms with local practice. In lieu of or in addition to levying special assessments, the public corporation, under the same conditions and for the same purpose, may exact connection, readiness to serve, availability or service charges to be paid by owners of land directly or indirectly connected with the drain project, or any combination thereof." This provision has since been amended by 1979 PA 135.

[3] Compare MCL 280.5; MSA 11.1005, which provides:

On February 23, 1979, a petition virtually identical to the above-described complaint was filed by the Eydes in the Tax Tribunal.

On March 7, 1979, Lansing Township filed motions for summary and accelerated judgment in the circuit court. The circuit court granted the township's motion for summary judgment as to Count I of the plaintiffs' complaint, finding that it stated no cause of action against the township and "is more properly assertable against defendants drainage boards." The circuit court also granted the township's motion for accelerated judgment as to all of Count II, except for the constitutional challenge to § 539 of the Drain Code, on the ground that the subject matter of Count II, except for the § 539 challenge, was within the exclusive jurisdiction of the Tax Tribunal. The circuit court, finding that the challenge to § 539 presented no question of fact and concluding that that provision was indeed constitutional, granted the township's motion for summary judgment on that issue.[4] The Court of Appeals affirmed the decisions of the circuit court. *Eyde v Lansing Twp,* 105 Mich App 370; 306 NW2d 797 (1981).

Meanwhile, on February 21, 1980, the Tax Tribunal issued an order *sua sponte* dismissing the petition as to respondent Drainage Board and Augmented Drainage Board and denying petitioners' motion to amend on the ground that, *inter alia,* the Eydes' appeal was "untimely."[5] The Court of

"Any *drainage district* heretofore or hereafter established shall be a body corporate with power to contract, to sue and to be sued, and to hold, manage and dispose of real and personal property, in addition to any other powers conferred upon it by law. The foregoing provision shall apply to all drainage districts including those established under chapters 20 and 21 of this act or under chapters 18 and 18a of Act No. 316 of the Public Acts of 1923, as amended." (Emphasis supplied.)

[4] The circuit court's actions left pending before it Count I of the Eydes' complaint against the drainage boards.

[5] The Tax Tribunal's actions left pending before it Count II of the

Appeals affirmed the decision of the Tax Tribunal. *Eyde v Lansing Twp,* 109 Mich App 641; 311 NW2d 438 (1981).

## I

Lansing Township decided to raise the money needed to pay for its portion of the Remy-Chandler Drain by imposing special assessments on those properties within its boundaries which it has determined will be especially benefited by the drain. In *Wikman v Novi,* 413 Mich 617, 630-631; 322 NW2d 103 (1982), this Court held that challenges to special assessments of this type are within the exclusive jurisdiction of the Tax Tribunal. Because Count II of the Eydes' complaint challenges the assessment levied by the township against the Eydes' property, the circuit court correctly granted defendants' motion for accelerated judgment on all but that portion of Count II which challenges the constitutionality of § 539 of the Drain Code.

The Tax Tribunal does not have the authority to invalidate acts of the Legislature. Const 1963, art 3, § 2; *Wikman v Novi,* 413 Mich 617, 646-647; 322 NW2d 103 (1982). As a result, the circuit court did not err in retaining jurisdiction over that portion of the Eydes' complaint which challenged the constitutionality of § 539 of the Drain Code. Since the Eydes' challenge to § 539 presents purely questions of law and presents no genuine issue concerning any material fact, the trial court did not err in deciding the constitutionality of that provision on a motion for summary judgment.

As for the substance of their attack on the constitutionality of § 539, the Eydes asserted in their complaint:

Eydes' complaint against Lansing Township.

"(F) That § 539 of the Drain Code of 1956 is unconstitutional and deprives the Eydes of their due process rights under the Michigan and United States Constitutions because it provides for the preparation of the special assessment roll prior to the hearing of objections on that roll, but that it does not provide for any alteration or correction of the special assessment roll after the objection hearing."

And argued to this Court:

"This section of the Drain Code is simply an empty right to attend a Township Board meeting and object to the Special Assessment Roll which in this case Lansing Township has little it can do as it has already been apportioned and assessed the tax. The Drain Code provides for no alteration or correction of the Roll after the objection hearing has been held."

The Court of Appeals found that although there is no language in § 539 providing for the alteration or correction of the special assessment roll after an objection hearing, that deficiency is cured by § 4 of the township special assessment act, MCL 41.724; MSA 5.2770(54), which provides, in pertinent part:

"At the time of such hearing, or any adjournment thereof which may be without further notice, the township board shall hear any objections to the petition, if a petition is required, to the improvement and to the special assessment district, and may revise, correct, amend, or change the plans, estimate of cost or special assessment district."

The Court of Appeals concluded that "[s]ince the opportunity for effective objection is provided, * * * it is immaterial that it is contained in a separate statute." 105 Mich App 379. Since § 539 provides that special assessments imposed pursuant to it shall be made under the statutory or

charter provisions governing special assessments in the public corporation to the extent applicable, we find no error in the Court of Appeals conclusion.

Finally, because Count I of the Eydes' complaint does not state a cause of action against Lansing Township but, as the trial court said, states a claim more properly assertable against the defendant drainage boards, we find no error in the trial court's grant of summary judgment on that point.

## II

Section 31 of the Tax Tribunal Act, MCL 205.731; MSA 7.650(31), provides that the Tax Tribunal shall have exclusive jurisdiction over special assessments arising under "the property tax laws." As the Court of Appeals determined, the final order of determination made by the Augmented Drainage Board pursuant to § 519 of the Drain Code, MCL 280.519; MSA 11.1519, and the final order of apportionment made by the Drainage Board pursuant to §§ 520 and 521 of the Drain Code, MCL 280.520; MSA 11.1520, MCL 280.521; MSA 11.1521, create an assessment on a public body and not an assessment levied against property. Accord *Wikman, supra,* pp 633-636. As the Court of Appeals noted,

"The public corporation is free to meet the levy in any legal way it chooses. MCL 280.526; MSA 11.1526. The public corporation—which in this instance is the township—could pay the assessment out of any funds available to the corporation—sales tax funds, general funds, ad valorem taxes, special assessments, or any combination thereof." 109 Mich App 641, 646.

Because the Eydes' claims against the drainage boards are outside the subject matter jurisdiction

of the Tax Tribunal, the Tax Tribunal correctly dismissed those claims. Because of the result we reach, there is no need to decide the merits of the Eydes' challenge to § 536 of the Drain Code.

The judgments of the Court of Appeals, in both cases, are affirmed.

WILLIAMS, C.J., and BRICKLEY and BOYLE, JJ., concurred with RYAN, J.

LEVIN, J. *(dissenting)*. The Eydes commenced actions in the circuit court and the Tax Tribunal alleging that the township excessively assessed their property, that the drainage boards failed to follow certain organizational and operational procedures, and that the notice provisions of the Drain Code were violative of the Due Process Clause.

The opinion of the Court affirms decisions of the Court of Appeals[1] holding that the circuit court action against the township alleging an excessive assessment can be maintained only in the Tax Tribunal and that the challenge to the operation of the boards can be pursued only in the circuit court. This Court finds no violation of the constitution.

Because the Drain Code is not a property tax law and thus special drainage assessments are not levied under a "property tax law,"[2] we would hold that the Eydes may maintain an action against the township in the circuit court challenging the

---

[1] In *Eyde v Lansing Twp,* 105 Mich App 370; 306 NW2d 797 (1981), the Court of Appeals affirmed the dismissal of certain claims brought against the township in the circuit court. In *Eyde v Lansing Twp,* 109 Mich App 641; 311 NW2d 438 (1981), the Court of Appeals affirmed the dismissal of certain claims brought against the boards in the Tax Tribunal. Actions on the remaining claims are still pending in both the circuit court and the Tax Tribunal. See *Eyde v Lansing Twp,* 109 Mich App 641, 648, fn 3.

[2] MCL 205.732; MSA 7.650(32).

assessment against their property. We also conclude that the notice provided did not satisfy the requirements of the Due Process Clause.

## I

The Eydes contend that as property owners subject to assessment by the township they were entitled to personal notice of the hearings at which the drainage boards approved the proposed drain improvement and apportioned the costs among the affected municipal corporations.[3] We agree and would reject *Fair Drain Taxation, Inc v St Clair Shores,* 219 F Supp 646 (ED Mich, 1963), which held that such notice is not required.

The assessment arises out of a drain improvement.[4] The location of the proposed drain improvement was known, and the boards could readily have determined which property owners would or might be specially assessed to pay for the improvement. While it is true that the township had the legal authority to finance the improvement by means other than a special assessment,[5] it is also true, that, as a practical matter, it would not do so. Few townships possess the financial means to finance such a project with ordinary revenues.

While it was not certain at the early stages of the proceedings that property owners such as the Eydes would be specially assessed, it clearly was probable that they would be. The Eydes might not

[3] The majority finds it unnecessary to address this question. *Ante,* p 295. The question was briefed, and the Court of Appeals addressed the question. *Eyde v Lansing Twp,* 109 Mich App 641, 649-651; 311 NW2d 438 (1981). Because there remains some ambiguity concerning the proper forum in which to protest a board's apportionment of costs (*ante,* p 295), and because the question may yet be litigated in these proceedings (see fn 1), we have addressed the question.

[4] *Eyde v Lansing Twp,* 105 Mich App 370, 371; 306 NW2d 797 (1981).

[5] MCL 280.526; MSA 11.1526.

be able to avoid assessment unless they protested the approval of the project. Because the boards failed to provide the Eydes with reasonable notice of the hearings, the Eydes were not given a meaningful opportunity to object, and they were thereby denied due process of law.

## II

The Court, on the authority of *Wikman v Novi,* 413 Mich 617; 322 NW2d 103 (1982), declares that "challenges to special assessments of this type are within the exclusive jurisdiction of the Tax Tribunal." *Wikman,*[6] however, concerned a special assessment for road improvements levied under the authority of the Home Rule Act,[7] and not a special drain assessment levied pursuant to the Drain Code.[8]

The Drain Code, in contrast with the Home Rule Act, contains special notice and assessment provisions pertaining both to apportionment of costs by boards[9] and to special assessments by municipal corporations.[10] These procedures were designed to expedite litigation that might delay the sale of bonds to finance construction.[11] In adopting the Tax Tribunal Act, the Legislature did not intend to substitute for the specially designed, relatively

[6] We recognize that *Wikman* is now the law in this state, but, for the reasons expressed in dissent in *Wikman,* the case was wrongly decided. *Wikman v Novi,* 413 Mich 617; 322 NW2d 103 (1982) (LEVIN, J., *dissenting*).

[7] MCL 117.1 *et seq.;* MSA 5.2071 *et seq.*

[8] MCL 280.1 *et seq.;* MSA 11.1001 *et seq.*

[9] See, *e.g.,* MCL 280.521; MSA 11.1521 (notice and hearing procedures); MCL 280.161; MSA 11.1161 (accelerated protest time limits); *Wikman, supra,* p 719 (LEVIN, J., *dissenting,* discussing review).

[10] See, *e.g.,* MCL 280.538a; MSA 11.1538(1) (special assessment prerequisites); MCL 280.539; MSA 11.1539 (special assessment limitations).

[11] See *Wikman, supra,* p 720 (LEVIN, J., *dissenting*).

expeditious procedures of the Drain Code the more time-consuming procedures of the Tax Tribunal.

Because the Tax Tribunal provides *"de novo"* review of the apportionment of benefits as well as of a claim that there is no benefit at all,[12] it seems likely that opportunities for delay will increase and appeals will multiply. This is contrary to the legislative goal of reducing such obstacles to the construction of a drain.

### III

The opinion of the Court holds that the Tax Tribunal lacks jurisdiction to hear the Eydes' claim against the boards because the boards assessed the apportioned costs to the affected municipal corporations (including the township) and not against the real property alleged to have been benefited by the improvement. This ruling avoids making the Tax Tribunal the forum for review of apportionment in the instant case, but only because the assessment is in respect to an intercounty drain and the boards chose to apportion costs under chapter 21 of the Drain Code and not under chapter 25.

The Drain Code vests the exclusive power to apportion and assess the costs of an intracounty drain in drainage boards.[13] Boards may and generally do assess the costs after apportionment directly to specific parcels of land.[14] Such assessments would, in the majority view, be property taxes levied under property tax laws reviewable in

---

[12] *Wikman, supra,* p 719 (LEVIN, J., *dissenting).*

[13] MCL 280.468; MSA 11.1468. See also *Attorney General v Zantman Intracounty Drainage Board,* 17 Mich App 110; 169 NW2d 132 (1969).

[14] MCL 280.151; MSA 11.1151.

the Tax Tribunal. The determination of the proper
forum to protest a board's apportionment thus will
henceforth depend on whether the drain is intra-
or intercounty. There is no reason to suppose that
the Legislature intended for disputes involving
apportionment to be resolved in separate forums
with different procedures depending on whether
the drain is intra- or intercounty.

Under the alternative apportionment method set
forth in chapter 25, which may be employed for
both intra- and intercounty drains, a board appor-
tions costs on the basis of "the relative valuations,
as equalized," of each municipal corporation.[15] Ap-
portionment based on the equalized valuation of
property seems, under the majority's reading of
*Wikman,* to be a property tax levied under a
property tax law and therefore within the exclu-
sive jurisdiction of the Tax Tribunal. Yet nothing
in the Drain Code suggests that the Legislature
intended that a chapter 25 apportionment of the
costs of an intercounty drain be treated differently
than a chapter 21 apportionment of the costs of an
intercounty drain. Chapter 25 is rather required to
"be construed to be integrated with chapters 20
and 21."[16] Tax Tribunal review of chapter 25 ap-
portionments requires a board apportioning the
cost of an intercounty drain to choose between a
possibly more expeditious method of apportion-
ment (chapter 21, reviewable in the circuit court)
and a method of apportionment that might appear
to the board to be more appropriate in the circum-
stances (chapter 25, reviewable in the Tax Tribu-
nal).

Tax Tribunal review of board decisions will
hamper the construction of drains. Instead of the

---

[15] MCL 280.626; MSA 11,1626.
[16] MCL 280.630; MSA 11.1630.

ten-day period provided in the Drain Code,[17] pro-
testers will now have thirty days to seek review.[18]
Because Tax Tribunal procedure provides for *de
novo* review,[19] and, unlike the Drain Code,[20] does
not provide for the assessment of costs,[21] review
may be employed as a delaying tactic.

## IV

The Legislature provided special procedures for
drain assessments because drains "are necessary
for the public health"[22] and are a matter of "pri-
mary public concern."[23] The regulation of the pub-
lic health is a matter within the police power of
the state,[24] and accordingly drain assessments may
be within the "police power" exception noted in
*Wikman*.[25]

KAVANAGH, J., concurred with LEVIN, J.

CAVANAGH, J., took no part in the decision
of this case.

---

[17] MCL 280.161; MSA 11.1161.

[18] MCL 205.735; MSA 7.650(35).

[19] See *Wikman, supra,* p 719 (LEVIN, J., *dissenting*).

[20] MCL 280.161; MSA 11.1161.

[21] See *Wikman, supra,* p 718 (LEVIN, J., *dissenting*).

[22] MCL 280.512; MSA 11.1512.

[23] Const 1963, art 4, § 51.

[24] See *Connor v Herrick,* 349 Mich 201, 216-219; 84 NW2d 427
(1957), and sources cited therein.

[25] *Wikman, supra,* p 635. The majority decision may impair the
constitutional rights of persons whose property is assessed by requir-
ing such persons to commence two actions to protest a single assess-
ment. The additional expenditure and effort required to protest might
be unnecessary and unconstitutional. See *Ortwein v Schwab,* 410 US
656; 93 S Ct 1172; 35 L Ed 2d 572, 578 (1973) (Douglas, J., *dissent-
ing*).