CHARTER TOWNSHIP OF WINDSOR v EATON COUNTY DRAIN
COMMISSIONER

Docket No. 109995. Submitted November 14, 1989, at Lansing. Decided December 18, 1989.

Eaton County Drain Commissioner Dale Benjamin levied two special assessments for the upgrade and repair of three separate drains. The special assessment rolls included the Charter Township of Windsor and several Windsor Township residents. The assessments against the township were levies against the public body in general, rather than assessments upon property owned by the township. The township filed a petition with the Michigan Tax Tribunal seeking to nullify the special assessments against the township and the individual township residents on the ground that the assessments were unlawful, being in violation of MCL 280.196; MSA 11.1196. Respondent Benjamin filed a motion to dismiss, asserting that the Tax Tribunal lacked subject-matter jurisdiction and the township lacked standing to assert the rights of the township residents. The tribunal granted the motion in part, finding that the township did lack standing to assert the rights of the township residents, but denied the motion as to the jurisdictional issue. Respondent Benjamin appealed by leave granted the denial of the motion to dismiss for lack of jurisdiction.

The Court of Appeals *held:*

The special assessment against the township does not fall under the exclusive and original jurisdiction of the Tax Tribunal because it is not a special assessment under the property tax laws.

Reversed.

TAXATION — TAX TRIBUNAL — JURISDICTION — SPECIAL ASSESSMENTS — DRAINS.

A special assessment by a county drain commissioner levied pursuant to the Drain Code of 1956 against a township as a

REFERENCES

Am Jur 2d, Special and Local Assessments §§ 2, 4, 65.
See the Index to Annotations under Drains and Drainage; Jurisdiction; Repairs and Maintenance; Special Assessments; Taxes.

public body in general rather than against property owned by the township for the upgrade and repair of county drains is not an assessment arising under the property tax laws and therefore does not come within the jurisdiction of the Michigan Tax Tribunal (MCL 205.731, 280.196; MSA 7.650[31], 11.1196).

*Church, Kritselis, Wyble & Robinson, P.C.* (by *J. Richard Robinson* and *Neil F. O'Brien*), for petitioner.

*Hubbard, Fox, Thomas, White & Bengtson, P.C.* (by *Geoffrey H. Seidlein*), for respondents.

Before: MCDONALD, P.J., and HOOD and GRIFFIN, JJ.

GRIFFIN, J. Eaton County Drain Commissioner Dale Benjamin (respondent) appeals on leave granted from orders of the Tax Tribunal which denied respondent's motion to dismiss for lack of jurisdiction. We reverse.

I

On August 14, 1987, and September 22, 1987, respondent levied two special assessments for the upgrade and repair of the "Willis-Shaw," "Old Maid Relaid," and "Harris & Whaley" drains. The special assessment rolls included the State of Michigan, Michigan Department of Transportation, Eaton County, Grand Trunk Western Railroad, Windsor Township, and several Windsor Township residents. It is undisputed that the assessments against Windsor Township were levies against the public body in general, rather than assessments upon property owned by the township.

On September 16, 1987, the Charter Township of Windsor (petitioner) filed a petition with the Michigan Tax Tribunal which sought to nullify the special assessments against the township at large

and the individual township residents on the grounds that the assessments were in violation of MCL 280.196; MSA 11.1196. In response to the petition, respondent filed a motion to dismiss which asserted lack of subject-matter jurisdiction and lack of standing. The Tax Tribunal granted the motion in part as to the claims of the individuals on the grounds that the petitioner lacked standing to assert the rights of the township residents. The motion, however, was denied as to the jurisdictional issue. A subsequent motion for rehearing was also denied.

II

On appeal, respondent drain commissioner raises two issues, one of which we find dispositive.

Respondent argues that the special assessment against the township at large does not fall under the exclusive and original jurisdiction of the Tax Tribunal for the reason that it is not a special assessment "*under the property tax laws.*" MCL 205.731; MSA 7.650(31).

Both parties cite and argue *Eyde v Lansing Twp,* 420 Mich 287; 363 NW2d 277 (1984). While petitioner seeks to distinguish *Eyde* on the grounds that it construes a different section of the Drain Code, respondent asserts that *Eyde* is applicable as to the issue of the jurisdiction of the Tax Tribunal. We agree with the respondent and conclude that the rationale of *Eyde* is controlling.

In *Eyde, supra,* the Supreme Court addressed the scope of the Tax Tribunal's jurisdiction and held the following regarding special assessments against public corporations, not levied against the real property of the public body:

Section 31 of the Tax Tribunal Act, MCL

205.731; MSA 7.650(31), provides that the Tax Tribunal shall have exclusive jurisdiction over special assessments arising under "the property tax laws." As the Court of Appeals determined, the final order of determination made by the Augmented Drainage Board pursuant to § 519 of the Drain Code, MCL 280.519; MSA 11.1519, and the final order of apportionment made by the Drainage Board pursuant to §§ 520 and 521 of the Drain Code, MCL 280.520; MSA 11.1520, MCL 280.521; MSA 11.1521 create an assessment on a public body and not an assessment levied against property. Accord *Wikman* [v *Novi,* 413 Mich 617, 633-636; 322 NW2d 103 (1982)]. As the Court of Appeals noted,

"The public corporation is free to meet the levy in any legal way it chooses. MCL 280.526; MSA 11.1526. The public corporation—which in this instance is the township—could pay the assessment out of any funds available to the corporation —sales tax funds, general funds, ad valorem taxes, special assessments, or any combination thereof." 109 Mich App 641, 646.

Because the Eydes' claims against the drainage boards are outside the subject matter jurisdiction of the Tax Tribunal, the Tax Tribunal correctly dismissed those claims. [*Eyde, supra* at 294-295.]

Because the Supreme Court affirmed the decision of the Court of Appeals and quoted with approval from our opinion, it is helpful to reexamine the reasoning of *Eyde v Lansing Twp,* 109 Mich App 641, 644-649; 311 NW2d 438 (1981), aff'd 420 Mich 287; 363 NW2d 277 (1984). On the issue of the Tax Tribunal's subject-matter jurisdiction, we stated:

The basic issue raised on appeal is whether the Tax Tribunal was without jurisdiction to hear the Eydes' claims under Count I against the drainage boards. The Eydes' argue that there must be one forum where all claims regarding drain assess-

ment matters can be determined. The boards respond that claims filed against municipal units of government under the Drain Code of 1956 are not assessments "under property tax laws" and thus the Tax Tribunal is without jurisdiction to hear such claims.

\* \* \*

This Court must assume that the Legislature meant something by limiting review of decisions concerning special assessments to decisions relating to special assessments "under property tax laws". The final order of determination of need made by the augmented board was not a "special assessment" made pursuant to property tax laws. That determination was made pursuant to § 519 of the Drain Code, MCL 280.519; MSA 11.1519, and is no more related to property tax laws than any other local government decision to spend. While the apportionment of costs against municipal corporations is termed a "special assessment" in the Drain Code, MCL 280.526; MSA 11.1526, it is not a special assessment "under property tax laws". It differs from a real property type assessment in that the "assessment" is not on property but is on the public corporation.

\* \* \*

Lending support to our determination that final orders of a drainage board are reviewable in the circuit court rather than in the Tax Tribunal is § 536 of the Drain Code, MCL 280.536; MSA 11.1536. That section reads:

"Neither the final order of determination nor the final order of apportionment shall be subject to attack in any court *except by proceedings in certiorari* brought within 20 days after the filing of such order in the office of the secretary of the board issuing the same. If no such proceeding shall be brought within the time above prescribed, the drain shall be deemed to have been legally established and the legality of the drain and the assessments therefor shall not thereafter be questioned in any suit at law or in equity." (Emphasis supplied.)

Review of Tax Tribunal decisions is by trial *de novo* and not by certiorari. MCL 205.735; MSA 7.650(35). As was stated by the Supreme Court in *Toledo, Saginaw & Muskegon R Co v Shafer,* 190 Mich 89, 91; 155 NW 712 (1916):

"An examination of the drain law clearly discloses that it was the intention of the legislature to have all matters pertaining to the locating and constructing of a drain, in the absence of fraud, tried out, determined, and forever settled in the direct proceedings to establish the drain or on certiorari, as provided for in the statute."

The Supreme Court has also stated that the purpose of the statute limiting review to certiorari within 20 days "undoubtedly is to give an opportunity to have a speedy hearing upon any question of jurisdiction or any question of irregularity." *Strack v Miller,* 134 Mich 311, 313; 96 NW 452 (1903). The Court has also stated that under the circumstances, certiorari "provides an adequate remedy for any person aggrieved by the proceedings to establish a drain, and protect [sic] the public and its officers against the delay which might ensue if the proceedings could be otherwise attacked". *Auditor General v Bolt,* 147 Mich 283, 287; 111 NW 74 (1907). Clearly, Tax Tribunal procedures are not designed to provide the type of review needed for these drain decisions.

A further reason for leaving jurisdiction over Drain Code proceedings with the circuit court is that most drains, including the drain in the instant case, are funded through the issuance of bonds. Once it is established that a drain is necessary to the public health, it is essential that it be financed and constructed as quickly as possible. To that end the Legislature purposely adopted the expedited proceedings by way of certiorari with a 20-day appeal period. Turning jurisdiction over to the Tax Tribunal would defeat legislative intent and delay construction.

We recognize that there is merit in the Eydes' claim that it is preferable to have one forum in which the claims against the township and the

claims against the drainage boards can be resolved. Obviously it is cumbersome and awkward to have jurisdiction in the circuit court over a portion of drain projects and jurisdiction in the Tax Tribunal over the remainder. Yet in view of the explicit statutory provisions described above and the clear distinction between an assessment against property and an assessment on a public body (rather than on the public body's lands), and because we are reluctant to interfere with established bonding procedures, we conclude that the remedy lies with the Legislature rather than with this Court. [*Eyde, supra* at 644-649.]

The above reasoning is sound and equally applicable to the present case. Also see *Wikman v Novi,* 413 Mich 617; 635-636; 322 NW2d 103 (1982). Although the instant case, unlike *Eyde,* involves intracounty, rather than intercounty, drains, we find the distinction to be without import as to the jurisdiction of the Tax Tribunal.

Finally, petitioner's reliance upon *Bridgeport Charter Twp v Saginaw Co Drain Comm'r,* 118 Mich App 334; 324 NW2d 618 (1982), is unpersuasive for the reason that the present issue was not addressed in *Bridgeport.* Accordingly, the dicta in *Bridgeport* is not controlling and the decision is not in conflict.

Reversed.