ASHLEY ANN ARBOR, LLC v PITTSFIELD CHARTER TOWNSHIP

Docket No. 304904. Submitted July 10, 2012, at Lansing. Decided December 27, 2012, at 9:05 a.m. Appeal to Supreme Court dismissed on stipulation, 494 Mich ___.

Ashley Ann Arbor, LLC, filed an action against Pittsfield Charter Township in the Michigan Tax Tribunal (MTT) on April 22, 2009, challenging a special assessment levied by defendant for a drainage system update. Plaintiff filed a separate complaint in the Washtenaw Circuit Court on December 13, 2010, raising the same arguments, and then filed a motion in the MTT to transfer the original action to the circuit court. On reconsideration the MTT ordered the case transferred to the circuit court, concluding that it lacked jurisdiction under MCL 205.731(a), a section of the Tax Tribunal Act, MCL 205.701 *et seq.*, because the special assessment was made under the Drain Code, MCL 280.1 *et seq.* The MTT noted that plaintiff had timely filed its petition within 30 days of defendant's confirmation of the special assessment roll as required by MCL 41.726(3), a section of the public improvements act (PIA), MCL 41.721 *et seq.* Plaintiff and defendant filed competing motions for summary disposition in both circuit court actions. The circuit court, David Scott Swartz, J., granted summary disposition in favor of defendant in both cases, concluding that if the action involved a special assessment under the Drain Code as urged by plaintiff, while the action would properly be in the circuit court, plaintiff's filing was untimely, and the MTT filing had not tolled the 30-day filing requirement for challenging defendant board's confirmation of the special assessment roll as required by MCL 41.726(3) of the PIA. The court determined in the alternative that if the assessment was not made under the Drain Code, but was instead a general assessment as asserted by defendant, the MTT had jurisdiction over the matter. Plaintiff appealed.

The Court of Appeals *held*:

1. Under MCL 205.731(a), the MTT has exclusive and original jurisdiction over a proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to the assessment, valuation, rates, special assessments, allocation or equalization under the property tax laws of Michigan. As long as the assessment is levied under property tax laws, the tribunal's

jurisdiction extends to a taxpayer's challenge to a special assessment levied by a public corporation, such as a township. Section 703(f) of the Tax Tribunal Act, MCL 205.703(f), as amended by 1992 PA 172, provides that the Drain Code is not a property tax law for purposes of jurisdiction within the MTT. The circuit court erred by concluding that it lacked subject matter jurisdiction over plaintiff's claims. The special assessment against plaintiff's property was made under the Drain Code because defendant petitioned the Washtenaw County Drain Commission to request the drain update, MCL 280.463, resulting in the formation of a drainage district and the determination of the percentage of the cost assigned to defendant, MCL 280.464, MCL 280.467. MCL 280.468 and MCL 280.473. Defendant was authorized under MCL 280.490 of the Drain Code to then prepare a special assessment roll and allocate its portion of the assessment to plaintiff and other residents. Even though MCL 280.490 provides that the special assessment shall be made under the statutory or charter provisions governing special assessments in the public corporation, the assessment itself was authorized by the Drain Code and the circuit court had jurisdiction over the cases under MCL 205.703(f) and MCL 205.731. *Eyde v Lansing Twp*, 420 Mich 287 (1984) and *Wikman v Novi*, 413 Mich 617 (1982), which held that the MTT has jurisdiction over challenges to special assessments under the Drain Code, was not binding because those cases were decided before the enactment of 1992 PA 172, which specifically removed from the MTT jurisdiction over special assessment challenges under the Drain Code.

2. Under MCL 600.5856(b), a statute of limitations may be tolled when an action is dismissed or transferred on some ground other than on the merits. MCL 41.726(3) provides that all assessments on a confirmed special assessment roll are final and conclusive unless an action contesting an assessment is filed in a court of competent jurisdiction within 30 days after the date of confirmation. A statutory limitations period is evidence of a legislative determination of that reasonable period of time that a claimant will be given to file an action. The circuit court erred by dismissing plaintiff's complaint on the basis that plaintiff's actions were not timely filed. Plaintiff properly filed its claim in the MTT within 30 days after defendant confirmed the special assessment roll. The 30-day filing period in MCL 41.762(3) is a period of limitations that was tolled when plaintiff filed its original action in the tribunal. Because jurisdiction over most other special assessment challenges that had been levied under the PIA would vest in the MTT, it qualified as a "court of competent jurisdiction" for purposes of MCL 41.726. Accordingly, plaintiff's original action in

the MTT was properly filed within 30 days after the assessment-roll confirmation, the filing tolled the period of limitations, and plaintiff's circuit court filing was therefore timely.

3. Courts possess equitable powers that are reserved for unusual circumstances. Even if plaintiff's April 22, 2009, MTT filing did not toll the statute of limitations pursuant to MCL 600.5856(b), the period was equitably tolled. Any error in jurisdiction was the result of confusion over the interplay between the holdings in *Eyde* and *Wikman* and MCL 205.703(f), as amended by 1992 PA 172, which specifically stated that the MTT did not have jurisdiction over assessments made under the Drain Code.

4. The MTT is required by Mich Admin Code, R 205.1111(4) to look to either the court rules or MCL 24.271 to MCL 24.287 of the Administrative Procedures Act if there is no relevant rule of practice or procedure to guide the tribunal. MCR 2.227(A)(1) provides that when a court determines in a civil action that it lacks subject matter jurisdiction over the action, the court may transfer that action to another court where venue would be proper. In this action, the MTT, as a quasi-judicial agency, had authority under MCR 2.227(A)(1) to transfer plaintiff's petition to the circuit court, which was required to consider the matter as if it had been originally filed in that court.

5. The Court of Appeals declined plaintiff's request to determine whether it was entitled to judgment as a matter of law; the circuit court was directed to review and decide the issue on remand.

Vacated and remanded.

SAAD, J., dissenting, would have affirmed the circuit court's order granting defendant summary disposition. Relying in part on the Supreme Court holdings in *Eyde* and *Wikman*, and the doctrine of stare decisis, he would have held that the MTT has exclusive and original jurisdiction over the instant action, which involves a township's tax assessment against a local property owner. Accordingly, the circuit court had no jurisdiction to hear plaintiff's challenge to the special property tax assessment made by the township under the PIA. He reasoned that only the Supreme Court has authority to interpret MCL 205.703(f), as amended by 1992 PA 172, in light of its precedent.

1. TAXATION — TAX TRIBUNAL — JURISDICTION — SPECIAL ASSESSMENTS — DRAIN CODE.

The Michigan Tax Tribunal (MTT) has exclusive and original jurisdiction over a proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to

the assessment, valuation, rates, special assessments, allocation or equalization under the property tax laws of Michigan; the tribunal's jurisdiction extends to a taxpayer's challenge to a special assessment levied by a public corporation, such as a township, but only if the assessment is levied under property tax laws; the MTT does not have original and exclusive jurisdiction over special assessments made by public corporations under the Drain Code, MCL 280.1 *et seq.*, because such an action does not involve a property tax law (MCL 205.703[f]; MCL 205.731[a]).

2. LIMITATION OF ACTIONS — STATUTE OF LIMITATIONS — TOLLING — TAX TRIBUNAL — COURTS OF COMPETENT JURISDICTION.

Under MCL 600.5856(b), a period of limitations may be tolled when an action is dismissed or transferred on some ground other than on the merits; MCL 41.726(3) provides that all assessments on a confirmed special assessment roll are final and conclusive unless an action contesting an assessment is filed in a court of competent jurisdiction within 30 days after the date of confirmation; even though the Michigan Tax Tribunal is a quasi-judicial agency and lacks jurisdiction, the MCL 41.726(3) 30-day filing period for contesting a special assessment is tolled when the plaintiff files an action in the tribunal, which constitutes a court of competent jurisdiction, within that 30-day period.

*Kemp Klein Law Firm* (by *Richard Bisio*) for Ashley Ann Arbor, LLC.

*Reading, Etter & Lillich* (by *John L. Etter*) for Pittsfield Charter Township.

Before: GLEICHER, P.J., and SAAD and BECKERING, JJ.

GLEICHER, P.J. Pittsfield Charter Township levied a special assessment against Ashley Ann Arbor, LLC (Ashley), to recover the cost of updating a drainage system that serviced Ashley's property. Ashley challenged the special assessment, contending that the drain updates prevented flooding on properties outside the special assessment district and did not benefit the properties subject to the tax. Ashley brought actions seeking to invalidate the special assessment in both the

circuit court and the Michigan Tax Tribunal (MTT). After transfer of the MTT petition to the circuit court, the court summarily dismissed both claims. The issues before us concern the jurisdiction of the dispute and the timeliness of the claims.

We hold that the circuit court was the correct forum to hear Ashley's challenge as the special assessment arose under the Drain Code, MCL 280.1 *et seq.*, and was therefore outside the MTT's exclusive and original jurisdiction. MCL 205.703(f); MCL 205.731. The circuit court improperly dismissed Ashley's challenge as the corporation timely raised it before the MTT, which then transferred jurisdiction to the circuit court. Moreover, Ashley's timely filing of its MTT petition tolled the period of limitations, rendering the circuit court's dismissal of Ashley's original complaint improper. We vacate the circuit court's summary dismissal orders and remand for consideration of Ashley's substantive claims.

## I. BACKGROUND

Ashley owns undeveloped property north of Michigan Avenue in Pittsfield Township. In 2009, the township created a special assessment district to finance its obligations for the Michigan Avenue East Central Area Drainage District Project. Under the project, the Washtenaw County drain commissioner reconstructed and diverted a section of a stormwater drain because a previous reconstruction had forced overflow waters to pool on residential properties south of the assessment district. The drain commissioner apportioned $1,724,994.45 of the project costs to the township. The township paid half this obligation from its general fund and apportioned the remainder of the debt among the 37 property owners in the special assessment district.

Ashley first objected to the special assessment at a March 24, 2009 public hearing before the township's board of trustees. In the hearing notice provided to the affected landowners, the township advised them of their right to "file a written appeal with the [MTT] within 30 days after confirmation of the special assessment roll."

Ashley subsequently filed a petition in the MTT on April 22, 2009, challenging its inclusion in the special assessment district. Ashley complained in part that "[t]he improvement does not specially benefit the subject property," "[t]he special assessment is not proportional to the benefit, if any, to the subject property," and the lack of proportionality violated MCL 41.725(1)(d) of the public improvements act (PIA), MCL 41.721 *et seq.* The MTT scheduled Ashley's petition for a hearing on the September 16-30, 2011 "Prehearing General Call."

While the MTT petition was pending, Ashley filed a separate complaint in the circuit court on December 13, 2010, raising the same challenges. On December 20, 2010, Ashley also filed a motion in the MTT to transfer the matter to circuit court. After receiving training to serve as a hearing referee in the MTT small claims division, Ashley's attorney learned for the first time that assessments imposed under the Drain Code are not within the MTT's jurisdiction and must be brought before the circuit court. Although it initially denied Ashley's motion, the MTT ordered the transfer on reconsideration. Specifically, the MTT ruled that the special assessment was made under the Drain Code and therefore that it lacked jurisdiction. The MTT noted that Ashley had timely filed its petition within 30 days of the township board's confirmation of the special assessment roll as required by MCL 41.726(3) of the PIA.

In February 2011, only two months after filing its original circuit court action and securing the MTT

transfer, Ashley filed a motion for summary disposition, arguing that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. The township responded that the circuit court lacked jurisdiction over both the original and transferred actions and therefore should dismiss both. If the special assessment was made under the Drain Code as contended by Ashley, the township argued that Ashley would be required to file an original action in the circuit court within 30 days of the March 24, 2009 township board meeting. The township argued that the MTT did not have the authority to transfer Ashley's 2009 petition to the circuit court and that Ashley's 2010 circuit court complaint was untimely, divesting that court of jurisdiction.

In the event that the special assessment was imposed under the PIA as contended by the township, then jurisdiction was proper in the MTT alone. In support of its belief that the special assessment fell under the PIA, the township relied on its board's resolution citing the PIA as authority to impose the special assessment against its property owners. The township further noted that although the Drain Code was integral to the county's approval of the drain project and the assessment of taxes against the township, the township switched gears and proceeded under the PIA.

Ashley responded that the MTT had already considered the jurisdictional issue and ruled that the township's special assessment was made under the Drain Code. Ashley reiterated the merits of its claim that the township's actions were within that code:

> The only statutory authority that the Township has to assess property for this is under the Drain Code. If you look at their resolution approving this assessment . . . it specifically mentions the Drain Code. They started this process

by ... doing a petition to the Washtenaw County Drain Commissioner to convene a Drainage Board. They held a public hearing under the Drain Code, as required, for the approval of this project, the Township held that hearing, and the whole process is a two-step process where the Drain Board approves the project, does the project, and after that, they allocate the cost to the municipalities and the public entities that are benefited. They allocated about 90 some percent of the cost to the Township, some to the County, some to the city. The Township then, under the Drain Code, has an option of how they want to pay for that. They can pay for it out of their General Fund. They can charge various fees to people or they can, as they did here, impose a special assessment. In fact, the Township decided to split the cost between 50 percent to their General Fund and 50 percent to the special assessment in this case.

But the authority to do that, the authority to impose a special assessment is under the Drain Code. It's MCL 280.490, and I just want to read one sentence from that so that it's clear how the Township came to impose this assessment. This says, in the Drain Code, "If the legislative body of a public corporation which has been assessed under this chapter determines that a part of the lands in the public corporation will be especially benefitted by the drain project, the legislative body may cause that portion of the assessment under this chapter to be specially assessed according to benefits against the especially benefitted lands." That's MCL 280.490(1). Subsection two of that goes on to say that they're to prepare a special assessment roll. This is all under the Drain Code.

Otherwise, they couldn't do this.

Ashley contended that the PIA authorizes the township to levy a special assessment for the township to make a public improvement. The improvement in this case, however, was made by the county drain commissioner. The PIA provides the procedures and methods for the township to create and implement project plans, actions that were taken by the county in this case.

Ashley further noted that drain improvements are not included in the exhaustive list of projects subject to the PIA.

Ultimately, the circuit court dismissed both cases:

> [T]he [MTT's] decision to transfer the case to the Circuit Court does not grant jurisdiction to this court. Further, if [Ashley] is correct that this is a special assessment under the Drain Code, then appeal is only proper in the Circuit Court. [Ashley's] tol[l]ing argument, however, is without merit because as [the township] persuasively argues, [Ashley] failed to file in a . . . "court of competent jurisdiction," within the 30-day time period. By way of example, if a claim is required to be filed in the Court of Claims and a party erroneously files in Circuit Court and then the statute of limitations runs before the error is corrected, the tol[l]ing provision does not operate to save the claim. The . . . complaint must be properly filed in order for tol[l]ing to operate. Based on [the township's] argument, . . . and despite the [MTT's] conclusion, the [MTT] is not, "a court of competent jurisdiction," if the Circuit Court has jurisdiction over the Drain Code matters. Alternatively, if, as [the township] argues, this is not a special assessment under the Drain Code and instead is a general assessment, this court does not have jurisdiction and the [MTT] is the proper forum. Either way, [Ashley's] case is not properly before this Court.[1]

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision to grant summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Summary disposition is appropriate under MCR 2.116(C)(4) when

---

[1] We note that Ashley initially challenged Washtenaw Circuit Court Judge David S. Swartz's authority to dismiss the transferred case as it had been assigned to a different judge. The circuit court remedied the situation and the case was properly assigned to Judge Swartz before the summary dismissal order was entered. Ashley has not renewed its challenge on this ground.

the court lacks subject matter jurisdiction. "The determination whether the circuit court has jurisdiction is a question of law that we review de novo." *Sierra Club Mackinac Chapter v Dep't of Environmental Quality*, 277 Mich App 531, 544; 747 NW2d 321 (2008). We review underlying questions of statutory interpretation de novo as well. *Driver v Naini*, 490 Mich 239, 246; 802 NW2d 311 (2011). Our goal is to ascertain the Legislature's intent from the plain language of the statute. *Id.* at 246-247. Only when a statute is ambiguous may we employ the tools of statutory construction. *Id.* at 247.

III. BECAUSE THE SPECIAL ASSESSMENT WAS IMPOSED UNDER
THE DRAIN CODE JURISDICTION WAS IN THE CIRCUIT COURT

The jurisdiction of our circuit courts is broad and covers "all matters not prohibited by law[.]" Const 1963, art 6, § 13. Before the creation of Michigan's first tax tribunal, all tax matters fell within the circuit courts' purview. As noted by our Supreme Court in *Wikman v Novi*, 413 Mich 617, 645; 322 NW2d 103 (1982):

> Historically, the circuit courts exercised jurisdiction over actions to enjoin the collection of special assessments. The courts continue to exercise this jurisdiction except as prohibited by the laws of this state. The divestiture of jurisdiction from the circuit court is an extreme undertaking. Statutes so doing are to be strictly construed. Divestiture of jurisdiction cannot be accomplished except under clear mandate of the law.

MCL 205.731(a) of the Tax Tribunal Act (TTA) declares that the MTT has "exclusive and original jurisdiction" over "[a] proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under

the property tax laws of this state." The MTT's exclusive and original jurisdiction extends to a taxpayer's challenge to "special assessments" levied by a public corporation, such as a township, for various types of public improvement projects so long as the assessment is "levied under property tax laws." *Wikman*, 413 Mich at 633-634. A "special assessment" is a "pecuniary exaction[] made by the government for a special purpose or local improvement, apportioned according to the benefits received." *Id.* at 632-633. As noted by our Supreme Court, "[s]ome special assessments are clearly not related to property taxes" and "are exacted through the state's police power as part of the government's efforts to protect society's health and welfare" or "in connection with a regulatory program to defray the cost of such regulation." *Id.* at 635.

In *Wikman*, the special assessment at issue was levied pursuant to a local ordinance and charter, which were considered part of the state's property laws by way of the Legislature's delegation of power to that local unit of government. *Id.* at 636-637. The Court noted that the General Property Tax Act, MCL 211.1 *et seq.*, itself does "not authorize any special assessments, [and therefore] they must refer to special assessments levied under other . . . statutes, municipal charters and ordinances." *Wikman*, 413 Mich at 637.

In *Eyde v Lansing Twp*, 420 Mich 287, 292; 363 NW2d 277 (1984), our Supreme Court used *Wikman*'s logic to hold that a petitioner's challenge to a special assessment levied by a township upon designated property owners to finance a drain project fell within the MTT's jurisdiction. The Court acknowledged that the assessment arose from the Drain Code, but distinguished between assessments levied against a township (which would fall within the circuit court's jurisdiction)

and assessments levied by the township against property (which, it reasoned, would fall within the MTT's jurisdiction). *Id.* at 294.

The township urges us to follow *Eyde* and hold that the township's special assessment for the drain improvement project falls in the MTT's exclusive and original jurisdiction. We reject this invitation because, as aptly argued by Ashley, *Eyde* is not applicable to the case now before us. Since *Wikman* and *Eyde* were decided, our Legislature has made clear that the property tax laws of this state do "not include the drain code of 1956." MCL 205.703(f), citing MCL 280.1 *et seq.*[2] With the enactment of 1992 PA 172, which added the substance of MCL 205.703(f) (originally as subsection [d]), the plain language of the TTA directs that a special assessment levied by a township under the Drain Code is outside the MTT's exclusive and original jurisdiction. The *Eyde* decision was based on an analysis of the 1980 statute, which did not exclude the Drain Code from the property tax laws of this state, and therefore is not controlling.[3]

---

[2] This amendment likely reflects the Legislature's adoption of Justice LEVIN's statement in dissent of *Eyde*, 420 Mich at 295-296: "Because the Drain Code is not a property tax law and thus special drainage assessments are not levied under a 'property tax law,' we would hold that the Eydes may maintain an action against the township in the circuit court challenging the assessment against their property." We cannot conclude, as does our dissenting colleague, that the Legislature's specific exclusion of the Drain Code from the ambit of Michigan's property tax laws "codified and clarified the holdings" in *Eyde* and *Wikman.*

[3] Contrary to the dissent's assertion, we are not overruling Supreme Court precedent; the opinions in question are simply inapplicable because the Legislature has since amended the relevant statutory provisions. See *Stand Up For Democracy v Secretary of State*, 492 Mich 588, 606-607; 822 NW2d 159 (2012); *Bush v Shabahang*, 484 Mich 156, 165-166; 772 NW2d 272 (2009); *In re Nestorovski Estate*, 283 Mich App 177, 196 n 6; 769 NW2d 720 (2009); *Lamp v Reynolds*, 249 Mich App 591, 604; 645 NW2d 311 (2002), lv den 467 Mich 937 (2003); *People v Pfaffle*,

We must strictly construe the Legislature's exclusion of Drain Code matters from the MTT's jurisdiction. *Wikman*, 413 Mich at 645. The special assessment against Ashley's property was certainly made under the Drain Code. Pursuant to MCL 280.463, a township that determines drain updates are necessary may petition the county drain commissioner to initiate the project. In the instant action the township filed such a petition with the Washtenaw County drain commissioner. The commissioner then designated a three-member drainage board pursuant to MCL 280.464 to consider the proposed project. As required by MCL 280.467 and MCL 280.468, the drainage board reached a tentative decision to create the drainage district, estimated the associated costs of the project, and determined the cost percentage to be borne by the township. The drainage board confirmed "the apportionment" and "prepare[d] a special assessment roll assessing" the actual or estimated drain project cost to the township. MCL 280.473.

The burden then shifted to the township to decide how to allocate the financial burden amongst its residents. MCL 280.490 provides in part:

> (1) Subject to the requirements of [MCL 280.489a],[4] if the legislative body of a public corporation, which has been assessed under this chapter, determines that a part of the lands in the public corporation will be especially benefited by the drain project to the extent of a portion of the amount

---

246 Mich App 282, 303-304; 632 NW2d 162 (2001), lv den 465 Mich 916 (2001). We agree with our dissenting colleague that the issues presented here are "complex." Complexity aside, we respectfully disagree with the notion that this Court's responsibility to construe the meaning and import of the 1992 amendment is limited by the Supreme Court's interpretation of a predecessor statute. While we lack authority to overrule a Supreme Court opinion, here we interpret a superseding statute.

[4] MCL 280.489a delineates a public corporation's duties leading up to filing a drain project petition.

assessed under this chapter, the legislative body may cause that portion of the assessment under this chapter to be specially assessed, according to benefits, against the especially benefited lands, if the special assessment method of financing is not inconsistent with local financing policy for similar drains and sewers. The special assessment shall be made under the statutory or charter provisions governing special assessments in the public corporation to the extent applicable. . . .

(2) After determining by resolution to proceed, the legislative body shall cause a special assessment roll to be prepared. After the special assessment roll is prepared, the proceedings with respect to the special assessment roll and the making and collection of the special assessments shall be conducted pursuant to the statute or charter governing special assessments in the public corporation.

The special assessment levied by the township against Ashley was authorized by the Drain Code. Absent the drain code, the township would not have been permitted to prepare the special assessment roll and Ashley would have had no cause for complaint. The special assessment is not removed from the drain code simply because MCL 280.490 incorporates procedures from outside the code, specifically from the "the statutory or charter provisions governing special assessments." MCL 280.490(1). The assessment is nevertheless imposed under the Drain Code and therefore jurisdiction is with the circuit court. MCL 205.703(f); MCL 205.731.

IV. ASHLEY'S MTT FILING TOLLED THE PERIOD OF LIMITATIONS AND THE ORIGINAL CIRCUIT COURT ACTION WAS TIMELY

To levy the special assessment against its property owners, the township had to incorporate and utilize the procedures set forth in the PIA. MCL 41.726(3) provides in relevant part:

> After the confirmation of the special assessment roll, all assessments on that assessment roll shall be final and conclusive unless an action contesting an assessment is filed in a court of competent jurisdiction within 30 days after the date of confirmation.

The township contends that Ashley's claims are barred because it did not file its original circuit court complaint until December 13, 2010, nearly 21 months after the township board confirmed the assessment roll. However, Ashley's filing in the MTT 29 days after the roll confirmation tolled the 30-day statute of limitations. As the limitations period was tolled, Ashley's original circuit court complaint was not belated and that court erred by dismissing it.

Contrary to the township's assertion on appeal, the 30-day filing period in MCL 41.726(3) is a period of limitations and therefore can be tolled.

> A statutory limitations period represents a legislative determination of that reasonable period of time that a claimant will be given in which to file an action. A statute of limitations is a statute of presumption. The fact of delay extending to the limit prescribed, without further proof, is itself a conclusive bar to suit. [*Lothian v Detroit*, 414 Mich 160, 165-166; 324 NW2d 9 (1982) (quotation marks and citation omitted).]

The MCL 41.726(3) limitation period is not worded in the general language used to create a statute of limitation. Surely the township would not challenge the nature of MCL 41.726(3) had the Legislature stated, "A person shall not bring or maintain an action contesting an assessment unless the action is commenced within 30 days after the date of confirmation," or "the period of limitations is 30 days after the board confirms the assessment roll." See MCL 600.5805 (delineating the statutory limitation periods for actions based on injury to persons or property). Nevertheless, MCL 41.726(3)

creates a statute of limitations. If an affected landowner does not file his or her action within 30 days, he or she is barred from doing so. The delay in filing "is itself a conclusive bar to suit" and the assessment roll automatically becomes final and conclusive.

MCL 600.5856(b) provides for the tolling of "statutes of limitations or repose . . . [a]t the time jurisdiction over the defendant is otherwise acquired." This tolling provision applies when an action is dismissed or transferred "on some ground other than on the merits (as for example—lack of jurisdiction over the subject matter)." *Kiluma v Wayne State Univ*, 72 Mich App 446, 449; 250 NW2d 81 (1976). Personal jurisdiction in this case was otherwise acquired over the township by the timely filing of Ashley's petition in the MTT. The MTT's jurisdiction is "based either on the subject matter of the proceeding . . . or the type of relief requested." *Wikman*, 413 Mich at 631. Once the MTT determined that it lacked jurisdiction over the subject matter, it transferred the petition instead of dismissing it. This transfer based on the lack of subject matter jurisdiction "falls precisely within the ambit of the tolling statute" and MCL 600.5856 "operated to suspend the running of the limitation period." *Kiluma*, 72 Mich App at 451.

There is no dispute that the township confirmed the assessment roll on March 24, 2009, and that Ashley filed its MTT petition 29 days later on April 22. The parties do dispute, however, whether Ashley's MTT filing satisfied MCL 41.726(3)'s requirement that the contesting party file suit "in a court of competent jurisdiction." We hold that under the facts of this case, it did.

First, when read in harmony with the TTA, the Legislature's use of the term "court" in MCL 41.726(3) must be interpreted within its statutory

context. MCL 205.731(a) directs that the MTT has "exclusive and original jurisdiction" over various types of tax-based challenges, including special assessments, arising "under the property tax laws in this state." The PIA provides for special assessments "against [affected] property" to finance various township-sponsored improvement projects. MCL 41.721; MCL 41.722. Most actions challenging a special assessment levied pursuant to the PIA will fall under the MTT's, not a "court's," exclusive jurisdiction. See generally *Wikman*, 413 Mich 617; *Michigan's Adventure, Inc v Dalton Twp*, 287 Mich App 151; 782 NW2d 806 (2010); *Blaser v East Bay Twp*, 242 Mich App 249; 617 NW2d 742 (2000). That the MTT is a "quasi-judicial agency," MCL 205.721, does not eliminate its jurisdiction over actions to be filed before a "court of competent jurisdiction."

Second, the MTT has "competent jurisdiction" to hear tax actions arising under the property laws of this state. Under the facts of this case, the late-made decision that jurisdiction was actually proper before the circuit court does not mean that the MTT was divested of competent jurisdiction from the onset. In the normal course, Ashley's challenge to a special assessment against its property would certainly fall in the MTT's jurisdiction.

As the MTT was a court of competent jurisdiction and Ashley filed its petition within 30 days after the assessment-roll confirmation, jurisdiction was otherwise acquired over the township. Pursuant to MCL 600.5856(b), the period of limitations was tolled at that point. The limitations clock stood still through Ashley's December 13, 2010 filing of its original circuit court complaint. Accordingly, reading the tolling statute together with MCL 41.726(3), Ashley filed its original

action in the circuit court within 30 days of the assessment-roll confirmation. The circuit court erred by dismissing that complaint.

### V. ASHLEY'S MTT FILING EQUITABLY TOLLED THE PERIOD OF LIMITATIONS

Even if Ashley's April 22 MTT filing did not toll the period of limitations pursuant to MCL 600.5856, we would find the period tolled as a matter of equity. Any "failure to comply" on Ashley's part "with the applicable statute of limitations is the product of an understandable confusion about" the proper forum to hear such challenges "rather than a negligent failure to preserve [its] rights." *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 432; 684 NW2d 864 (2004).

The courts of this state "undoubtedly possess equitable power, [but] such power has traditionally been reserved for 'unusual circumstances' . . . ." *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590; 702 NW2d 539 (2005). And this case is the epitome of unusual. There has been much confusion about the proper forum to hear Ashley's claims. In its March 4, 2009 public hearing notice, the township advised Ashley to file any challenges to the upcoming assessment-roll confirmation in the MTT. Ashley followed that advice. Because of cases like *Wikman* and *Eyde*, which were decided before the 1992 amendment to the TTA, Ashley, the township, and even the MTT hearing referee incorrectly believed that jurisdiction over the dispute vested in the MTT. Ashley's attorney was the first to question the propriety of MTT jurisdiction. Those doubts arose only after he received specialized training to serve as an MTT hearing referee. The MTT did not readily accept Ashley's position and initially denied its motion to transfer the petition. In this Court, the township continues to assert

that jurisdiction is proper only before the MTT. Until today, no court had determined that such an action must be brought before the circuit court.

These circumstances would support a claim that the period of limitations was equitably tolled, even under the narrow parameters permitted in this state. "[A] pinpoint application of equity" is warranted when any errors are the result of "the preexisting jumble of convoluted case law through which the plaintiff was forced to navigate." *Id.* at 590 n 65. Given the existing law, the MTT was the only court of competent jurisdiction known to the parties at the time the petition was filed. Equity would therefore support Ashley's position.

VI. THE MTT PROPERLY TRANSFERRED ASHLEY'S PETITION TO THE
CIRCUIT COURT

In the alternative, and contrary to the township's assertion, the MTT could transfer Ashley's petition to the circuit court once it discovered its lack of jurisdiction. Practices and procedures in the MTT are governed by administrative rules. If there is no rule on point, the MTT must look to either the court rules or MCL 24.271 to MCL 24.287, a section of the Administrative Procedures Act, to guide its conduct. Mich Admin Code R 205.1111(4). There is no administrative rule governing the MTT's conduct when it discovers that it lacks jurisdiction over a pending matter. There is no relevant statute either. MCR 2.227(A)(1), however, provides in pertinent part that:

> [w]hen the court in which a civil action is pending determines that it lacks jurisdiction of the subject matter of the action, but that some other Michigan court would have jurisdiction of the action, the court may order the action transferred to the other court in a place where venue would be proper.

The MTT, before which Ashley's petition was pending, determined that it lacked jurisdiction and that the circuit court was the proper forum for Ashley's claims. Accordingly, the MTT could order the action transferred to the circuit court. The fact that the MTT is a "quasi-judicial agency," rather than a "court," is of no import. As the executive has directed the MTT to follow the court rules, it steps into the role of a "court" when it applies those rules.

In this regard, we find *Detroit v Nat'l Exposition Co*, 142 Mich App 539; 370 NW2d 397 (1985), instructive. In that case, the City filed a condemnation action against the defendant corporation to take its property for the infamous Poletown Project. *Id.* at 542. The circuit court ruled in the City's favor and calculated the price the City had to pay to take the land. *Id.* The City then stated its intent to withhold from the just compensation owed to the defendant the sum of various unpaid property taxes. *Id.* The defendant corporation filed a postjudgment motion to challenge the validity of the tax assessment. *Id.* at 542, 545. The circuit court transferred the defendant's motion to the MTT. *Id.* at 542. This Court upheld the transfer as the MTT had exclusive jurisdiction over the property taxation issue. *Id.* at 545. This Court found no ground for complaint simply because a "court" transferred the case to a "quasi-judicial agency," rather than to another "court."

Once Ashley's petition was transferred to the circuit court, moreover, the case proceeded "as if it had been originally filed there." MCR 2.227(B)(1). The circuit court was bound to treat the transferred matter as if it had been filed on April 22, 2009, 29 days after the township board confirmed the assessment roll. In this regard, the circuit court should have treated the transferred petition akin to the original circuit court com-

plaint, both being timely because the period of limitations tolled on April 22, 2009.

As noted in *Wikman*, 413 Mich at 654, in which a circuit court transferred an action to the MTT:

> The timely filing in the circuit court was not sufficient to invoke the jurisdiction of the [MTT]. However, through this action, the circuit court acquired jurisdiction over defendants. MCL 600.5856 . . . provides that the statute of limitations is tolled whenever jurisdiction over the defendant was otherwise acquired.

The *Wikman* Court concluded that the MTT was not divested of jurisdiction despite the action being transferred after the limitations period had otherwise expired. The timely filing of the action in the incorrect forum in that case meant that jurisdiction was obtained over the defendant and the limitation period was tolled. *Id.* Thereafter the circuit court could transfer the action and the MTT was bound to consider the matter as if it had been originally filed before that tribunal.

The circuit court misapplied the law by determining that it lacked jurisdiction and dismissing the transferred action. Consistent with the court rule, statute and precedent, we now vacate that order and reinstate Ashley's cause of action based on the transferred MTT petition.

### VII. WE WILL NOT CONSIDER THE MERITS

Ashley asks this Court to review its claims and determine that it is entitled to judgment as a matter of law. We decline that invitation. The circuit court has yet to reach the merits and consider whether the township correctly included Ashley's property within the special assessment district. That court should consider this issue in the first instance.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

BECKERING, J., concurred with GLEICHER, P.J.

SAAD, J. (*dissenting*). I respectfully dissent. Because binding Michigan Supreme Court precedent clearly and unequivocally provides that, as here, a township's tax assessment against a local property owner falls within the exclusive and original jurisdiction of the Tax Tribunal, our Court, as an inferior or subordinate, intermediate appellate court, has no authority to overrule that precedent. The doctrine of vertical stare decisis compels our Court to simply reaffirm this longstanding principle of law and hold that the circuit court had no jurisdiction to hear this landowner's challenge to the special property tax assessment made by the township under the township public improvement act. MCL 41.721 *et seq*.

The majority holds that the 1992 amendment to the Tax Tribunal Act, 1992 PA 172, § 1; MCL 205.703(f), changed the law regarding jurisdiction to hear local property owners' challenges to township assessments, so that the circuit court, not the Tax Tribunal, now has exclusive jurisdiction over those claims. Were it true that this is the effect of the 1992 amendment—an assertion which I believe misapprehends the reason and meaning of the amendment—it would be within the province of the Supreme Court to so hold and overrule its own precedent. Our Court is constrained to follow Supreme Court precedent and we are not at liberty to exceed our power and overrule it, even if we were to correctly guess how the Supreme Court would rule under these facts in light of the 1992 amendment. And, here, in my view, the majority's guess is incorrect.

In my view, the 1992 amendment simply codified and clarified the holdings in *Wikman v Novi*, 413 Mich 617; 322 NW2d 103 (1982), *Eyde v Lansing Twp*, 420 Mich 287; 363 NW2d 277 (1984), and *Charter Twp of Windsor v Eaton Co Drain Comm'r*, 181 Mich App 481; 449 NW2d 689 (1989), to prevent suits by local property owners against drain boards in the Tax Tribunal. In *Eyde*, 420 Mich at 292, our Supreme Court held that all challenges to special assessments on personal property are within the exclusive and original jurisdiction of the Tax Tribunal. Thus, it determined that a challenge to a special assessment that was imposed by a township on private property in order to pay for the township's financial obligations to the drainage board arose under the property tax laws of the state, and that the Tax Tribunal had exclusive and original jurisdiction over such a dispute. *Id.* Consequently, under *Eyde* the Tax Tribunal, not the circuit court, has jurisdiction over plaintiff's claims. *Id.* In contrast, if a special assessment is against a township as a "public body in general, rather than . . . upon property owned by the township," it does not fall under the property tax laws under MCL 205.731, because the assessment is against a public corporation. *Windsor*, 181 Mich App at 482, 485. In other words, first-level disputes over intragovernmental special assessments are not real property assessments contemplated by the property tax laws, and are handled in circuit court for myriad reasons, including the need for finality and prompt appellate review, particularly in cases addressing drain projects, which often involve jurisdictional questions, bond issues, and pressing public health concerns. *Id.* at 484-487, citing *Eyde v Lansing Twp*, 109 Mich App 641, 644-649; 311 NW2d 438 (1981).

It does not render the township's assessment as one arising under the Drain Code, MCL 280.1 *et seq.*, merely

because the township assessed property taxes against a local property owner to defray the cost of a drain board's charge against the township for a drain project. On the contrary, while the charge by the drain board against the township does arise out of and is authorized by the Drain Code, the township's power and ability to pass this cost on to local property owners is derived from and arises out of the authority granted to it by the public improvements act. MCL 41.721 *et seq.* Indeed, in *Wikman,* 413 Mich at 631-634, our Supreme Court held that MCL 205.731(a) clearly expressed the Legislature's intent that the Tax Tribunal's exclusive and original jurisdiction extend to special assessments challenges that were levied by a public corporation, such as a township, for public improvement projects like the one here. In my view, the Drain Code unambiguously states that if the township decides to impose a special assessment on private property owners, it must do so pursuant to authority that is outside the Drain Code. See MCL 280.490(2). In any event, the Legislature's 1992 amendment to the Tax Tribunal Act does not provide that claims contesting tax bills by local property owners—imposed through the public improvements act or otherwise—should be heard in circuit court instead of the Tax Tribunal, where they have historically been adjudicated.

Again, the majority comes to the opposite conclusion, but even if my interpretation of the 1992 amendment is incorrect, this simply reinforces that it is for our Supreme Court to make the judgment about the effect of the amendment. As an intermediate appellate Court, we have the dual obligation, under the rule of law, to faithfully interpret legislative enactments and to also respect vertical stare decisis. And when, as here, these two roles possibly conflict and there is legitimate disagreement about a legislative change, we must be

careful to do justice to both roles and not give short shrift to either. Our case law instructs that because *Eyde* addressed the same issue, it constitutes binding precedent that we are bound to follow. This Court may not overrule or modify decisions of the Michigan Supreme Court, even when a statute has been amended in a way that may change the holding of a decision or otherwise render the decision obsolete. *Paige v Sterling Heights*, 476 Mich 495, 523-524; 720 NW2d 219 (2006), citing *Boyd v W G Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993), in turn overruled on other grounds *Karaczewski v Farbman Stein & Co*, 478 Mich 28 (2007), in turn overruled on other grounds *Bezeau v Palace Sports & Entertainment, Inc*, 487 Mich 455 (2010). See also *Pellegrino v AMPCO Sys Parking*, 486 Mich 330, 354 n 17; 785 NW2d 45 (2010); *People v Mitchell*, 428 Mich 364, 369; 408 NW2d 798 (1987) ("An elemental tenet of our jurisprudence, stare decisis, provides that a decision of the majority of justices of this Court is binding upon lower courts."). In *Paige*, 476 Mich at 524, our Supreme Court held that this Court could not overrule a decision of the Michigan Supreme Court, and that

> [t]he obvious reason for this is the fundamental principle that only this Court has the authority to overrule one of its prior decisions. Until this Court does so, all lower courts and tribunals are bound by that prior decision and must follow it even if they believe that it was wrongly decided or has become obsolete.

Moreover, in *Boyd*, 443 Mich at 523, the Michigan Supreme Court stated that "it is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until this Court takes such action, the Court of Appeals and all lower courts are bound by that authority." The Court explained in *Mitchell*, 428 Mich

at 370, that if this Court finds that a Michigan Supreme Court decision is no longer viable, it may state its disagreement with the case, but it is bound to follow it nonetheless. Thus, because the Michigan Supreme Court's decision in *Eyde* has not been overruled subsequent to the amendment of MCL 205.703, this Court is bound by the decision. *Id.* See also *Paige*, 476 Mich at 524.

The majority cites cases for the ostensible proposition that this Court may ignore Supreme Court precedent when the Legislature amends a statute, but the cases are simply inapposite. In *Stand Up for Democracy v Secretary of State*, 492 Mich 588, 606-607; 822 NW2d 159 (2012), our Supreme Court ruled that its *own prior opinion* was superseded by statute on the basis of new "clear guidance" by the Legislature. In *Bush v Shabahang*, 484 Mich 156, 165-166; 772 NW2d 272 (2009), the Supreme Court reconsidered its *own prior decisions*, both of which "relied on language of a statute that is no longer in existence . . . ." In *In re Nestorovski Estate*, 283 Mich App 177, 196 n 6; 769 NW2d 720 (2009), the majority denied that it was overruling Supreme Court precedent but, as here, rebuffed the doctrine of stare decisis on the basis of *Lamp v Reynolds*, 249 Mich App 591, 604; 645 NW2d 311 (2002), and *People v Pfaffle*, 246 Mich App 282, 303-304; 632 NW2d 162 (2001). However, as with the majority's other citations, *Lamp* relied on cases in which the Supreme Court declared that it could modify or overrule *its own decisions*, and not that this Court could modify or overrule decisions of the Michigan Supreme Court. See *Lamp*, 249 Mich App at 604, citing *Robinson v Detroit*, 462 Mich 439, 464; 613 NW2d 307 (2000), and *Brown v Manistee Co Rd Comm*, 452 Mich 354, 367-368; 550 NW2d 215 (1996), in turn overruled *Rowland v Washtenaw County Rd Comm*, 477 Mich 197 (2007). And the Court in *Pfaffle*, 246 Mich

App at 303-304, declined to overrule or ignore a prior Supreme Court decision, observing that the issues addressed in the Supreme Court opinion were wholly different from those at issue in *Pfaffle* and addressed a statute that "no longer exists in even a roughly similar form."

For these reasons, the majority's reliance on those decisions is misplaced. More importantly, however, because the holding in *Paige* has not been overruled, this Court is bound by the rule set forth therein and may not overrule a decision of the Michigan Supreme Court even if it concludes that a subsequent amendment to a statute renders the Michigan Supreme Court decision obsolete. *Pellegrino*, 486 Mich at 353-354.

Notwithstanding our Supreme Court's mandate that lower courts must abide by its decisions in situations precisely like this one, the majority declines and, instead attempts to characterize the 1992 amendment as though a statute has been repealed, replaced, or completely nullified when the reality is obviously far more complicated. Disregarding the application of Supreme Court precedent speaks not only to a disregard of the rules of vertical stare decisis, but to an indifference to the true complexity of the jurisdictional issue presented, as evidenced by the record itself. Plaintiff originally filed this action in the Tax Tribunal and, while it was pending, filed a challenge to the tax assessment in circuit court. On the basis of plaintiff counsel's training to become a Tax Tribunal hearing referee, he believed the case should be transferred out of the Tax Tribunal entirely and heard in the circuit court. The Tax Tribunal initially denied plaintiff's transfer petition, at first believing that it had jurisdiction over the challenge to the tax assessment, and then, on reconsideration, granted the transfer to circuit court. Thereafter, with

two separate cases pending before two different judges—plaintiff's original complaint and the transferred case—the circuit court ruled that, indeed, it lacked jurisdiction to consider any of plaintiff's challenges to the tax assessment by defendant and that the case should have been heard in the Tax Tribunal. Thus, while the majority simply dismisses *Eyde* as superseded and without effect, the legal significance and application of the 1992 amendment confounded not only the litigants and their counsel, but also the circuit court and the Tax Tribunal.

Moreover, contrary to the majority's position, the amendment does not exist in isolation, but intersects with many other statutory sections that remain and impact how tax assessments may be imposed and challenged. The Drain Code, the property tax laws, and the public improvements act are comprised of hundreds of statutory sections with myriad requirements, procedures and levels of hearings and challenges by both governmental entities and individual property owners. How the 1992 amendment fits within them and existing precedent, is, at best, a complex question of jurisdiction and procedure which I believe should be addressed by our Supreme Court. And again, the very fact that there is serious disagreement here about the impact of the amendment underscores the importance of deferring to the Supreme Court as the doctrine of stare decisis says we must.

Accordingly, I dissent and would hold that the circuit court lacked subject-matter jurisdiction over plaintiff's claims and that the trial court correctly granted summary disposition to Pittsfield Township.