*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

CONSTANCE COLEMAN, ERNEST L. JARRETT, and ERNEST L JARRETT PC,

        Plaintiffs-Appellants,

v

MICHIGAN COSMETIC SURGERY CENTER and MICHAEL W. GRAY, D.O.,

        Defendants-Appellees.

UNPUBLISHED
January 15, 2025
3:15 PM

Nos. 365154; 366044
Oakland Circuit Court
LC No. 2022-196764-CZ

---

CONSTANCE COLEMAN,

        Plaintiff-Appellant,

v

MICHAEL W. GRAY, DO and MICHIGAN COSMETIC SURGERY CENTER,

        Defendants-Appellees.

No. 365958
Oakland Circuit Court
LC No. 2023-198013-NM

---

Before: RIORDAN, P.J., and O'BRIEN and GARRETT, JJ.

PER CURIAM.

These consolidated appeals involve plaintiff Constance Coleman's attempts to pursue a medical-malpractice action against defendants, Michigan Cosmetic Surgery Center and Michael W. Gray, D.O. The three appeals stem from two separate actions. In one action, which this opinion will refer to as "the equitable action," plaintiffs—Coleman, her attorney Ernest L. Jarrett, and his law firm Ernest L. Jarrett PC—sought medical records from defendants and for the trial court to enter an order tolling Coleman's yet-to-be-filed medical-malpractice action. The trial court dismissed this action, concluding that the request for medical records was moot and that the complaint failed to state a claim for equitable tolling. The court also awarded defendants' request

-1-

for sanctions. In the other action, which this opinion will refer to as "the medical-malpractice action," Coleman[1] sued defendants for medical malpractice. The trial court concluded that this action was barred by the statute of limitations and accordingly dismissed the case.

On appeal, appellants challenge the trial court's dismissal of both actions, as well as the trial court's order imposing sanctions on plaintiffs in the equitable action. This Court ordered that the appeals be consolidated.[2] We conclude that Coleman was not entitled to tolling for her medical-malpractice claims, so the trial court properly dismissed both the equitable action and the medical-malpractice action. We further conclude that the trial court clearly erred by awarding sanctions in the equitable action, so we reverse that decision.

I. BACKGROUND

These actions arise from a cosmetic surgery, commonly known as a "tummy tuck," that Gray performed on Coleman on June 10, 2020. The complaint in the medical-malpractice action alleged that Gray improperly performed the surgery, causing Coleman's appearance to be distorted. The complaint further alleged that, within days of the surgery, Coleman noticed that her wound from the surgery was discharging. When she returned to defendants' office for her scheduled check-up appointment on June 18, 2020, Gray commented that the wound "didn't look that bad" and prescribed antibacterial medications. Coleman's condition continued to worsen, and she went back to defendants' office on June 23, 2020. Gray again told her that the wound did not "look that bad," but he had to reclose the wound. Coleman's wound still continued worsening, causing her to return to defendants' office on June 26, 2020, and July 16, 2020, but Gray still did essentially nothing. On July 18, 2020, Coleman visited her primary care physician, who sent her to a local hospital, where she was admitted for four days. Her treatment for the infection lasted an additional three months.

Coleman retained Jarrett to represent her and investigate a potential medical-malpractice claim. On September 28, 2020, Jarrett contacted defendants, requesting Coleman's medical records. After not receiving the records, Jarrett made several calls to defendants' office to inquire into the status of his request. Among the excuses he was given included that the person responsible for the records was not in, but that she would return Jarrett's call.

Having not received any return call, Jarrett called defendants' office again on March 4, 2021, and this time he spoke with Barbara Klausing. Klausing denied having any knowledge about a request for Coleman's records, so Jarrett resent his request via fax to Klausing. Then, after paying a charge for copying, Jarrett finally received a mailing from defendants' office. The

---

[1] This opinion uses "Coleman" to refer to the plaintiff in the medical-malpractice action, "plaintiffs" to refer to the three plaintiffs in the equitable action, and "appellants" to refer to the combination of the plaintiffs in both actions who are appealing the lower court's rulings.

[2] *Coleman v Mich Cosmetic Surgery Ctr*, unpublished order of the Court of Appeals, entered June 13, 2023 (Docket Nos. 365154 & 365958); *Coleman v Mich Cosmetic Surgery Ctr*, unpublished order of the Court of Appeals, entered September 29, 2023 (Docket No. 366044).

documents Jarrett received, however, were not Coleman's medical records but were instead promotional and licensing materials for defendants' office.[3]  Jarrett and Coleman tried to follow-up with Klausing and defendants to correct this oversight, but defendants continued refusing to provide the sought-after medical records.

On June 7, 2022, Coleman served a notice of intent (NOI) on defendants.  Neither the notice nor the accompanying cover letter mentioned the unfulfilled medical-records request.

On October 18, 2022, plaintiffs filed the equitable action.  The complaint requested (1) that defendants be ordered to provide Coleman's medical records, (2) that the statute of limitations for Coleman's noticed medical-malpractice action be tolled from the date of Jarrett's original request (September 28, 2020) until the records were provided, and (3) that defendants be ordered to pay plaintiffs' costs and attorney fees.  While not part of the lower court record, plaintiffs also submitted an "ex-parte motion for order to show cause why a preliminary injunction should not be entered."[4]  On October 26, 2022, plaintiffs noticed this ex-parte motion for a November 2, 2022 hearing.

Appellants represent on appeal that this ex-parte motion was served on defendants, but there is no proof of service in the lower court record, and defendants deny ever receiving the motion.  Defendants nevertheless filed a "response" to the ex-parte motion on October 31, 2022.  In that response, defendants argued that, based on the allegations made in plaintiffs' complaint, plaintiffs were not entitled to a preliminary injunction.  This was so, according to defendants, primarily because plaintiffs could not show irreparable harm justifying a preliminary injunction given that they supposedly received the wrong documents in March 2021, then waited 19 months to file this action and request a preliminary injunction.  Defendants additionally argued that plaintiffs were not entitled to the relief requested in their complaint because (1) defendants had forwarded Coleman's medical records to Jarrett after the October 18 complaint was filed[5] and (2) accepting all of the allegations in the complaint as true, there was still no basis to toll the statute of limitations for Coleman's medical-malpractice claim.

At the November 2, 2022 hearing on plaintiffs' ex-parte motion, the trial court stated that it was "disregarding all of [the] procedural issues" with plaintiffs' motion[6] and was going to rule on its merits.  Doing so, the court denied plaintiffs' motion because it agreed with defendants that

---

[3] Defendants deny this and assert that they sent Coleman's medical records to Jarrett.

[4] This motion was never accepted for filing by the trial court, but the court apparently received the motion via email.  This Court asked appellants' attorney to provide this motion to this Court on appeal, but the request went unanswered.  As a result, the contents of the motion are unknown.

[5] In support of this argument, defendants attached to their response an affidavit signed by Klausing in which she averred that she shipped Coleman's medical records in March 2021, and then again on October 31, 2022.

[6] The court noted that plaintiffs' motion ultimately asked the court to enter a preliminary injunction, but they failed to file their motion in accordance with MCR 3.310(A), which is the court rule governing preliminary injunctions.

there could be no showing of irreparable harm given that plaintiffs waited 19 months from when Jarrett received the wrong documents to file the equitable action. Plaintiffs' counsel asked the court to clarify whether it was dismissing the action, and the court said that it was only ruling that there were "no grounds for a preliminary injunction," adding, "And also, that I do not have the authority to toll the statute of limitations." Plaintiffs' counsel again asked the court to clarify whether it was dismissing the action, and the court said, "I have not yet dismissed the action." Following this hearing, the trial court entered an order denying "Plaintiffs' Motion for Preliminary Injunction, including any request that the Statute of Limitations be tolled."

On November 14, 2022, plaintiffs filed an amended complaint. The amended complaint repeated the allegations from the original complaint but added more factual allegations as to how Jarrett and Coleman tried to procure Coleman's medical records from defendants both before March 2021 and after. In the request for relief, the amended complaint asked the trial court to (1) toll the statute of limitations from when Coleman's medical records were originally requested on September 28, 2020, until the records were shipped on October 31, 2022, and (2) order defendants to pay plaintiffs' costs and attorney fees.

On November 23, 2022, defendants moved for summary disposition on the amended complaint. Given the complaint's factual allegations, defendants contended that the amended complaint continued to request Coleman's medical records, and defendants argued that this request was moot because defendants already forwarded those documents to Jarrett. As for the amended complaint's request to toll the statute of limitations, defendants argued that the court lacked jurisdiction to decide the issue because the court could not toll a statute of limitations for an action that had not yet been filed. Defendants additionally argued that plaintiff's tolling claim was not within the equitable jurisdiction of the court because the issue of tolling in medical-malpractice claims was addressed by the Legislature in MCL 600.5856. In closing, defendants asserted that plaintiffs' amended complaint was frivolous and requested that plaintiffs be sanctioned for filing a frivolous complaint.

The entirety of plaintiffs' argument in response to this motion was as follows:

Defendants are not entitled to avoid the relief the Plaintiffs seek merely because they very belatedly, and only in response to this suite [sic] provided the records.

By outrageously delaying the production of records, defendants impaired Plaintiff's rights as a civil litigant. She incurred costs and fees that she should never have faced.

This court has the authority to grant equitable relief. Clearly, defendants outrageously delayed production of the records. Plaintiff should suffer no harm, nor risk of harm because of defendants' unreasonable conduct, whether intentional or not.

Defendants' motion for summary disposition should be denied.

On January 13, 2023, the trial court issued an opinion and order granting defendants' motion for summary disposition under MCR 2.116(C)(8) without holding oral argument. The

-4-

court accepted defendants' view that plaintiffs' amended complaint alleged a claim for the production of Coleman's medical records and ruled that, because the records had been produced, the claim was moot. As for plaintiffs' request to toll the period of limitations, the trial court explained that, accepting all of the allegations in plaintiffs' complaint as true as required by MCR 2.116(C)(8), "Plaintiffs have failed to state a claim on which relief can be granted." The court added that it had "already ruled . . . that Plaintiffs were not entitled to any tolling," and criticized plaintiffs for not citing "any authority for their request." Similarly, the court denied plaintiffs' request for attorney fees because plaintiffs had not cited any authority for their assertion that the court could order costs and attorney fees under the circumstances. Lastly, the court granted defendants' request for sanctions, finding that plaintiffs' amended complaint was frivolous because plaintiffs' legal positions were devoid of arguable legal merit. The court reasoned that, when plaintiffs filed the amended complaint, Jarrett already possessed the medical records, and the court had already ruled that equitable tolling was not available to Coleman.

Shortly before the court issued this decision, Coleman, on January 3, 2023, filed her complaint giving rise to the medical-malpractice action. Coleman's complaint did not spell out any distinct counts, but it generally alleged that Gray committed medical malpractice by (1) incompetently performing Coleman's surgery, causing Coleman's appearance to be distorted and (2) failing to properly treat Coleman's postsurgical infection.

On March 2, 2023, defendants moved for summary disposition under MCR 2.116(C)(7), arguing that Coleman's medical-malpractice claim was time-barred. According to defendants, the statute of limitations for Coleman's medical-malpractice claim premised on her June 10, 2020 surgery would normally have expired on June 10, 2022. But defendants conceded that Coleman filed an NOI on June 7, 2022, which gave her until December 9, 2022, to file her claim. Factoring in the various administrative and executive orders entered related to the COVID-19 pandemic that effectively tolled various periods of limitation, defendants argued that Coleman had until December 19, 2022, to file her claim, making the January 3, 2023 complaint untimely.

In response, Coleman argued that defendants only addressed her claim as it pertained to Coleman's surgery, and she stressed that she was asserting a distinct claim of postsurgical malpractice aspect as well. Still, with respect to her claim arising from the June 10, 2020 surgery, Coleman asserted that it did not accrue until the last date she was treated by Dr. Gray (July 16, 2020) under Michigan's "last treatment rule." Coleman accordingly claimed that she had until January 14, 2023, to file her complaint. Coleman alternatively argued that, if the last-treatment rule did not apply, her postsurgical malpractice claims accrued each time she was treated by Dr. Gray—June 18, 2020, June 23, 2020, June 26, 2020, and July 16, 2020—and "each separate claim was timely filed." As a final catch-all, Coleman contended that "defendants fraudulently concealed Plaintiff's medical records" until October 31, 2022, so Coleman had two years from that date to file her claim under MCL 600.5855.

In reply, defendants argued that the last-treatment rule was abrogated by statute in 1986, and that, accepting as true Coleman's assertion that she alleged two distinct medical-malpractice claims, her postsurgical malpractice claim was also time-barred. On the latter point, defendants explained that Coleman's postsurgical malpractice claim would have accrued, at the latest, on June 18, 2020, and, after accounting for the NOI tolling and the COVID-19 exempted period, that claim had to be filed by December 19, 2020, to be timely. Defendants argued that no claim could have

accrued after June 18, 2020, because a physician's adherence to an erroneous treatment plan does not give rise to a new claim. As for Coleman's fraudulent-concealment allegation, defendants noted that Coleman had the medical records on October 31, 2022, that the complaint prepared in this matter was dated December 2, 2022, and that the affidavit was dated December 12, 2022, which, taken together, clearly demonstrated that Coleman could have filed her claim before December 19, 2022.

In an opinion and order issued without oral argument, the trial court granted defendants' motion for summary disposition under MCR 2.116(C)(7). The court began its analysis by rejecting Coleman's argument about the last-treatment rule, agreeing with defendants that the rule was abrogated in 1986. Turning to when Coleman's claims accrued, the court opined that, at the latest, all of Coleman's claims accrued by June 26, 2020, because her complaint alleged that at the July 16, 2020 visit, Dr. Gray "attempted nothing different." Accounting for the tolling from the NOI and the exempted period due to the COVID-19-related orders, the court opined that a medical-malpractice claim accruing on June 26, 2020, was timely filed on or before December 27, 2022. Coleman's complaint filed on January 3, 2023, was therefore untimely. As for Coleman's fraudulent-concealment argument, the court reasoned that it had already rejected any argument that defendants acted in bad faith when they failed to produce the medical records, and that there was no question that Coleman possessed the records by October 31, 2022.

This appeal followed.

## II.  EQUITABLE ACTION

Appellants argue that, in the equitable action, the trial court erred by addressing issues outside the scope of plaintiffs' ex-parte motion, erred by denying the complaint's request for equitable tolling, erred by granting summary disposition to defendants, and erred by awarding sanctions to defendants. We agree with the last argument—that the trial court erred by awarding sanctions—but disagree with the remainder of appellants' arguments.

## A.  EX-PARTE MOTION

Appellants' first argument relates to the ex-parte motion that the trial court heard on November 2, 2022. In essence, appellants contend that the trial court erred by misconstruing this motion. According to appellants, the ex-parte motion was merely seeking a show-cause hearing, and, while the motion was "inartfully drafted," it did not seek a ruling on whether plaintiffs were entitled to equitable tolling. So, appellants argue, by treating this ex-parte motion as a motion for a preliminary injunction, the trial court ruled on a motion that plaintiffs did not bring; and, in a similar vein, by ruling that plaintiffs were not entitled to equitable tolling, the trial court "redefine[d] the scope and substance" of the ex-parte motion.

Addressing these contentions clearly requires reviewing the ex-parte motion to determine whether appellants are correct about the motion's scope and its requested relief. This motion was

-6-

never filed with the trial court, however, so it is not included in the lower court record.[7]  After this appeal was filed, it became apparent that review of the ex-parte motion was necessary to resolve appellants' arguments related to the motion, so this Court sent a letter to appellants requesting that they provide this Court with a copy of the motion.  The letter warned that, if the motion was not provided, any issue "which requires consideration" of the motion "*may be deemed waived*."  Appellants never responded to this letter.  As a result, this Court does not have the ex-parte motion that is the subject of appellants' arguments, and it is impossible for this Court to determine whether appellants are correct about what the motion sought and its scope.  We accordingly deem appellants' arguments that require consideration of the ex-parte motion to be waived.[8]

## B.  SUMMARY DISPOSITION

Appellants next argue that the trial court erred by denying plaintiffs' request for equitable tolling, and by granting defendants' motion for summary disposition on that claim.  We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo.  *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008).  The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(8).  As explained by our Supreme Court:

---

[7] At the hearing on the ex-parte motion, the trial court explained that it had rejected plaintiffs' filing of the motion because an ex-parte motion was improper given the relief the motion requested, that the court had instructed plaintiffs on how to properly file the motion but they failed to do so, that the motion had been emailed to the court so the court had reviewed it, and that the court was going to "disregard[] all of [the] procedural issues" with plaintiffs' motion to give them a ruling on the merits.  Plaintiffs' counsel at the hearing disputed some of the court's characterizations, but he admitted that he emailed the motion to the court, and there is no dispute that the trial court had the motion before issuing its ruling.

[8] We also note that appellants fail to explain why the trial court's alleged errors related to the motion were not harmless.  See MCR 2.613(A).  As explained later in this opinion, we consider the trial court's order following the November 2, 2022 hearing as denying plaintiffs' request for a preliminary injunction for equitable tolling, and conclude that the trial court later properly granted summary disposition to defendants on plaintiffs' request for equitable tolling in their amended complaint.  Given these conclusions, any supposed error that the trial court made by addressing equitable tolling at the November 2 hearing was harmless.  As for appellants' argument that plaintiffs were merely requesting a show-cause hearing and not a preliminary injunction, appellants admit in their statement of facts that the plaintiffs filed an "*Ex-Parte* Motion for an Order to Show Cause why a preliminary injunction should not be issued."  Accepting for the sake of argument appellants' argument that granting this motion would have merely led to a show-cause hearing, defendants at that hearing would have had to show cause "why a preliminary injunction should not be issued."  They did that at the November 2 hearing by arguing that a preliminary injunction was not warranted because plaintiffs could not establish irreparable harm, and the court agreed.  Clearly, then, the trial court's supposed error of treating plaintiffs' motion for a show-cause hearing as a motion for a preliminary injunction was harmless.

> A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal
> sufficiency of the complaint on the basis of the pleadings alone. The purpose of
> such a motion is to determine whether the plaintiff has stated a claim upon which
> relief can be granted. The motion should be granted if no factual development
> could possibly justify recovery. [*Beaudrie v Henderson*, 465 Mich 124, 129-130;
> 631 NW2d 308 (2001).]

The application of equitable doctrines, such as equitable tolling, are questions of law reviewed de novo. See *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013).

Equitable tolling is "a remedy that permits a court to allow an action to proceed when justice requires it, even though a statutory time period has elapsed," by tolling the period of limitations. 51 Am Jur 2d, Limitation of Actions, § 155, p 603. Equitable tolling "has a legal basis arising out of our common law, and it may be invoked when traditional equitable reasons compel such a result." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 204; 747 NW2d 811 (2008). This doctrine does not permit courts to, "under the veil of equity, supplant" a statute of limitations imposed by the Legislature. *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 589; 702 NW2d 539 (2005). Rather, it is a remedy "typically available only if the claimant was prevented in some extraordinary way from exercising his or her rights." 51 Am Jur 2d, Limitation of Actions, § 155, pp. 603-604. Examples include where a party fails to comply with the applicable limitations period due to understandable confusion created by courts, see *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 432; 684 NW2d 864 (2004); *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 406; 738 NW2d 664 (2007), by the Legislature, see *Wells Fargo Rail Corp v Dep't of Treasury*, 344 Mich App 351, 374; 1 NW3d 373 (2022), or by some combination of the two, see *Ashley Ann Arbor, LLC v Pittsfield Charter Twp*, 299 Mich App 138, 155-156; 829 NW2d 299 (2012). Equitable tolling is not available due to a party's "negligent failure to preserve [its] rights." *Bryant*, 471 Mich at 432. Equitable tolling only applies when a party is prevented from complying with a statute of limitations "through no fault or lack of diligence of their own," meaning that the "inequitable circumstances preventing a party from initiating a timely lawsuit suit must be truly beyond the control of the plaintiff." 51 Am Jur 2d, Limitation of Actions, § 155, p 603-604.

Appellants contend that equitable tolling should have applied to Coleman's medical-malpractice claim because defendants did not provide her medical records in a timely manner. We agree with the trial court that, accepting all of the allegations in plaintiffs' amended complaint as true, they do not establish a claim of equitable tolling because the allegations do not demonstrate that Coleman diligently pursued her claim. After allegedly receiving the wrong materials from defendants in March 2021, Jarrett and Coleman made an unknown number of phone calls to defendants over the following 19 months.[9] During that timeframe, Coleman served defendants with an NOI, but that notice did not mention anything about the outstanding medical-records request. Plaintiffs then waited until roughly two months before the statute of limitations for Coleman's malpractice claims was set to expire to institute an action seeking the medical records, and they were provided the records roughly six weeks before limitations period expired. Plaintiffs

---

[9] The amended complaint states that Jarrett was "sidelined" due to medical issues for "a combined total of 24 weeks"—or roughly six months—during this period.

did not allege that Coleman's failure to timely bring her claim was due to understandable confusion caused by the courts, the Legislature, or even the parties; indeed, there is no suggestion that Coleman was confused at all about when she needed to bring her claims by. Even if defendants' withholding of Coleman's medical records was deliberate, it still does not warrant equitable tolling because Coleman still failed to diligently pursue her medical-malpractice claim in the face of defendants' obstruction.[10] Coleman could have taken any number of steps to compel defendants to produce her medical records earlier, including bringing an action to compel production of the records sooner. It therefore cannot be said that Coleman's failure to timely institute the medical-malpractice action was truly beyond Coleman's control. The circumstances of this case are simply not the type of extraordinary circumstances that warrant equitable tolling, and the trial court properly granted defendants' motion for summary disposition on this claim under MCR 2.116(C)(8).[11]

## C. SANCTIONS

Appellants next argue that the trial court erred by awarding sanctions to defendants in the equitable action. We agree.[12]

---

[10] A defendant's misconduct that induced a plaintiff from timely bringing a cause of action is generally considered as part of a claim for equitable estoppel. See generally *Cincinnati Ins Co v Citizens Ins Co*, 454 Mich 263; 562 NW2d 648 (1997). Plaintiffs did not allege a claim for equitable estoppel, and even if they did, it clearly would not apply because nothing supports that defendants' "acts or representations" induced Coleman's delay in bringing her action. See *McDonald*, 480 Mich at 205.

[11] In their amended complaint, plaintiffs also requested costs and attorney fees for having to file an action to compel defendants to produce the medical records. The trial court rejected this request because plaintiffs had not cited any authority which authorized the court to award costs and attorney fees under the circumstances. On appeal, appellants argue that plaintiffs were entitled to costs and attorney fees but still fail to cite any authority which authorized the trial court to award costs and attorney fees to plaintiffs under the circumstances. We accordingly deem this issue abandoned. See *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

[12] Defendants argue that this Court lacks jurisdiction to hear appellants' challenge to the trial court's decision to impose sanctions. We disagree. The trial court granted defendants' request for sanctions as part of its January 13, 2022 opinion and order—the same order that granted defendants' motion for summary disposition on all of the claims raised in the amended complaint. There can be no serious dispute that the January 13, 2022 opinion and order constituted a final order under MCR 7.202(6)(a)(*i*); it was "the first judgment or order that dispose[d] of all the claims and adjudicates[d] the rights and liability of all the parties[.]" Having properly appealed the January 13, 2023 order as of right, see MCR 7.203(A), plaintiff was free to challenge any ruling

The trial court imposed sanctions after finding that plaintiffs' amended complaint was frivolous. "A trial court's finding that an action is frivolous is reviewed for clear error." *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*.

The trial court relied on MCL 600.2591 and MCR 1.109(E) to order sanctions. MCR 1.109(E) permits sanctions if a party signs a document that was not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. See MCR 1.109(E)(5)(b) and (E)(6). MCR 1.109(E)(7) allows for additional sanctions as provided in MCR 2.625(A)(2) if a party's pleading is frivolous. MCR 2.625(A)(2), in turn, requires courts to assess costs as provided by MCL 600.2591 if the court finds that a party's action is frivolous. And MCL 600.2591 permits a court to "find that a party's action is frivolous if (1) the party initiated the suit for purposes of harassment, (2) '[t]he party's legal position was devoid of arguable legal merit,' or (3) '[t]he party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.' " *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015), quoting MCL 600.2591(3)(a).

The trial court provided two reasons for its finding of frivolousness. First, the trial court found that plaintiffs' amended complaint was frivolous to the extent that it requested an order requiring defendants to produce Coleman's medical records because defendants already produced the documents. Problematically, the amended complaint *never requested* an order compelling defendants to produce Coleman's medical records. In fact, the amended complaint conceded that Coleman's medical records "were received on October 31, 2022." The request for relief in the amended complaint was limited to (1) an order tolling the statute of limitations for Coleman's medical-malpractice claim and (2) an order requiring defendants to pay plaintiffs' costs and attorney fees. The request for equitable tolling was based exclusively on defendants' failure to timely produce Coleman's medical records, so it was necessary for those allegations to be included in the amended complaint. But the amended complaint plainly was not asking the trial court to compel defendants to produce those records. The trial court obviously could not impose sanctions for a claim that plaintiffs did not make, and the court clearly erred by doing so.

Second, the trial court found that plaintiffs' amended complaint was frivolous because "the Court already ruled that [plaintiffs] were not entitled to equitable tolling of the statute of limitations." Because a court speaks through its orders, *Rinas v Mercer*, 259 Mich App 63, 71; 672 NW2d 542 (2003), we assume that this was a reference to the trial court's November 10, 2022 order, which preceded the November 14, 2022 amended complaint. That order was titled, "Order denying plaintiffs' motion for preliminary injunction," and it stated in relevant part:

> **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction, including any request that the Statute of Limitations be tolled **IS DENIED** for the reasons stated on the record.

---

from that order, including the trial court's decision to grant defendants' request for sanctions, *Green v Ziegelman*, 282 Mich App 292, 302 n 6; 767 NW2d 660 (2009).

This order plainly only denied plaintiffs' motion for a preliminary injunction, "including" plaintiffs' request for a preliminary injunction tolling the statute of limitations. This is significant because a ruling on a preliminary injunction is distinct from a ruling on the merits of a claim.

"The purpose of a preliminary injunction is to preserve the status quo pending a final hearing regarding the parties' rights." *Hammel v Speaker of House of Representatives*, 297 Mich App 641, 647; 825 NW2d 616 (2012) (quotation marks and citation omitted). While one factor to consider when ruling on a motion for a preliminary injunction is "the likelihood that the party seeking the injunction will prevail on the merits," *id*. at 648 (quotation marks and citation omitted), determining that a party is not likely to prevail is clearly different from a ruling on the merits. This is why the refusal to grant a preliminary injunction does not render moot the subject matter of the complaint related to the injunction, see *Dunnebacke v Detroit, GH & M Ry Co*, 248 Mich 450, 457; 227 NW 811 (1929), nor does it preclude a final judgment for the plaintiff, see *Hopkins v Crantz*, 334 Mich 300, 303; 54 NW2d 671 (1952).

It follows that the trial court's November 10, 2022 order, which addressed a request for a preliminary injunction, did not have any preclusive effect on any claims raised in plaintiffs' complaint or their amended complaint. The trial court therefore erred as a matter of law when it concluded that its earlier preliminary ruling precluded plaintiffs' claim, and its subsequent finding based on this error of law was clearly erroneous.

For the above reasons, we reverse the award of sanctions. In light of this ruling, we need not address any of appellants' arguments related to the amount of sanctions awarded.

## III. MEDICAL-MALPRACTICE CASE

For appellants final argument, they contend that the trial court erred when it granted defendants' motion for summary disposition in the medical-malpractice case. We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Odom*, 482 Mich at 466. Defendants moved for summary disposition under MCR 2.116(C)(7). Summary disposition is appropriate under MCR 2.116(C)(7) if a claim is, among other things, barred by a statute of limitations. When considering a motion brought under this subrule, the court considers all the affidavits, depositions, admissions, or other documentary evidence submitted by the parties. MCR 2.116(G)(5). "The contents of the complaint are accepted as true unless contradicted by the evidence provided." *Odom*, 482 Mich at 466 (quotation marks and citation omitted). All evidence is viewed in a light most favorable to the plaintiff. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Whether a claim is time-barred is a question of law, reviewed de novo. *DiPonio Constr Co, Inc v Rosati Masonry Co, Inc*, 246 Mich App 43, 47; 631 NW2d 59 (2001).

Coleman's complaint alleged that defendants committed malpractice both when they performed surgery on Coleman and during their care of Coleman following the surgery. The surgery was performed on June 10, 2020, and Coleman went to defendants for follow-up visits on June 18, June 23, June 26, and July 16, 2020.

Under MCL 600.5805(8), individuals have two years after a claim accrues to bring an action for medical malpractice. *Hubbard v Stier*, 345 Mich App 620, 626; 9 NW3d 129 (2023).

MCL 600.2912b(1) requires a plaintiff seeking to file a medical-malpractice action to provide at least 182 days' notice, and MCL 600.5856(c) provides that, if a limitations period was going to expire during this notice period, then the statute of limitations is tolled the length of the notice period. See *Haksluoto v Mt Clemens Regl Med Ctr*, 500 Mich 304, 311-312; 901 NW2d 577 (2017); *Hubbard*, 345 Mich App at 626. Additionally, any period of time between March 10, 2020 and June 20, 2020 cannot be included when determining "the computation of days relative to the timeliness of [a] plaintiff's complaint" due to the various COVID-19 administrative orders that were issued by our Supreme Court in the midst of the pandemic. *Carter v DTN Mgt Co*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165425), slip op at 25.

Applying these rules to the dates of treatment stated in Coleman's complaint leads to the following deadlines by when each "claim" could be timely filed:

| Date of Visit | General Period of Limitation Deadline | NOI Tolling Duration | COVID exempt period (to get to June 20, 2020) | Deadline |
|---|---|---|---|---|
| June 10, 2020 | June 10, 2022 | 182 days | 10 days | December 19, 2022 |
| June 18, 2020 | June 18, 2022 | 182 days | 2 days | December 19, 2022 |
| June 23, 2020 | June 23, 2022 | 182 days | n/a | December 22, 2022 |
| June 26, 2020 | June 26, 2022 | 182 days | n/a | December 27, 2022[13] |
| July 16, 2020 | July 16, 2022 | 182 days | n/a | January 17, 2023[14] |

Appellants do not dispute the tolling lengths the trial court used, nor do they suggest that any other dates should have been used. Thus, assuming that each visit resulted in a separate malpractice claim accruing on that date, they are all time-barred except for the July 16, 2020 visit.

As a matter of law, however, no claim accrued at the July 16, 2020 visit. This Court has held that when a physician adheres to the same diagnosis and treatment determinations, it does not constitute a distinct instance of malpractice. *Kincaid v Cardwell*, 300 Mich App 513, 527-528; 834 NW2d 122 (2013), citing *McKiney v Clayman*, 237 Mich App 198; 602 NW2d 612 (1999). Here, Coleman's complaint alleged that at the July 16, 2020 visit, Gray "attempted nothing different." It is thus clear that, at the July 16, 2020 visit, Gray was simply adhering to his previous

---

[13] The actual deadline was December 25, 2022, but because this day fell on a weekend, the next open business day is used, which was December 27 (December 26 was a recognized court holiday that year). See MCR 1.108(1); MCR 8.110(D)(2).

[14] The actual deadline was January 14, 2023, but because this day fell on a weekend, the next open business day is used, which was January 17 (January 16 was the Martin Luther King, Jr. holiday). See MCR 1.108(1); MCR 8.110(D)(2).

diagnosis and treatment of Coleman's infection, which means that no new claim of medical malpractice accrued at that visit. Accordingly, the trial court did not err by granting defendants' motion for summary disposition under MCR 2.116(C)(7) because all of Coleman's claims were time-barred.

Appellants contend that Coleman's claim was timely because defendants fraudulently concealed Coleman's claim under MCL 600.5855. That statute provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations. [MCL 600.5855.]

This statute does not apply when the plaintiff is "aware of a 'possible cause of action.'" *Doe v Roman Catholic Archbishop of the Archdiocese of Detroit*, 264 Mich App 632, 643; 692 NW2d 398 (2004), quoting *Moll v Abbott Laboratories*, 444 Mich 1, 23-24; 506 NW2d 816 (1993).

There can be no serious dispute that Coleman was aware of a possible cause of action long before defendants withheld her medical records. Indeed, appellants admit on appeal that Coleman "suspected that the defendants may have committed malpractice" shortly after her surgery. And Coleman must have been aware of a possible cause of action for medical malpractice following her surgery given her complaint alleges that, as a result of the surgery, (1) her navel was displaced such that it was no longer located at the abdominal mid-line and (2) her stomach and abdomen were misaligned, causing a "distorting" appearance. Given these allegations, no medical records were necessary to put Coleman on notice of a possible cause of action against defendants. Similarly, because Coleman was aware of the continuing postsurgical infection and defendants' allegedly ineffective treatment of the wound—an infection that was, ultimately, successfully treated by a different medical provider—she was well aware of a possible cause of action related to her postsurgical treatment before defendants withheld her medical records.

Accordingly, Coleman cannot avail herself of MCL 600.5855. And because Coleman's claims were otherwise time-barred, the trial court properly granted defendants' motion for summary disposition under MCR 2.116(C)(7).

Affirmed in part, reversed in part. No taxable costs are awarded, as neither party prevailed in full. MCR 7.219(A).

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Kristina Robinson Garrett

-13-